540 So.2d 1219 (1989)
STATE of Louisiana, Plaintiff,
v.
Howard Lee CASSELL, Defendant.
No. CR 88-528.
Court of Appeal of Louisiana, Third Circuit.
March 15, 1989.
J. Reed Walters, Jena, for defendant.
Donald R. Wilson, Asst. Dist. Atty., Jena, for plaintiff.
Before STOKER, DOUCET and KNOLL, JJ.
DOUCET, Judge.
On March 2, 1988, defendant, Howard Lee Cassell, was found guilty by a jury of twelve of possession of marijuana, a violation of La.R.S. 40:966. After the jury returned *1220 its verdict, the trial judge sentenced defendant to six months imprisonment in the parish jail. Defendant appealed his conviction and sentence, asserting six assignments of error. One of these assignments of error has not been briefed on appeal and is, therefore, considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).
FACTS
On December 25, 1986, at approximately 4:00 a.m., defendant was operating a vehicle on U.S. Highway 84 in LaSalle Parish, Louisiana, traveling eastbound between the towns of Tullos and Jena. A LaSalle Parish Deputy Sheriff, Kenneth R. McEntyre, testified that he was traveling westbound on the same highway and observed defendant's vehicle cross the center line of the highway into the westbound lane. Deputy McEntyre stated that he was attracted by this erratic driving and that he turned his patrol unit around and followed defendant's vehicle, observing it to leave its proper lane of traveleither to the right or the leftat least ten times. He stated that he activated the bar lights of his patrol unit, but that the defendant's vehicle did not stop immediately. He testified that he then radioed State Trooper Howard McKee in order to seek Trooper McKee's help in stopping the vehicle. Deputy McEntyre stated that he had spoken to Trooper McKee earlier that morning and knew the trooper was running a stationary radar check east of where he was attempting to stop defendant's vehicle. Trooper McKee testified that he switched on his patrol unit's lights where he was situated ahead of defendant's vehicle and pulled in behind the defendant as the defendant passed him. The two officers were able to get the defendant stopped and pulled over, with Deputy McEntyre parking in front of defendant's vehicle and Trooper McKee parking behind it. The trooper and defendant exited their vehicles and moved to the rear of defendant's vehicle. Deputy McEntyre then exited his vehicle and began walking toward the area where defendant and Trooper McKee were standing. Deputy McEntyre stated that while walking along the side of defendant's vehicle, he stopped and shined his flashlight into the vehicle while making a cursory view of the interior of the vehicle. He stated that in doing so, he observed a clear plastic bag on the front seat floor of the vehicle on the driver's side which appeared to him to contain marijuana. He stated that he then seized the bag and its contents and placed the defendant under arrest for possession of marijuana with intent to distribute and for driving while intoxicated.
The testimony of Trooper McKee concerning the circumstances of defendant's arrest corroborated the testimony of Deputy McEntyre. Defendant's testimony, however, was quite different from the testimony of the two officers.
The defendant testified that the officers were parked on the side of the highway next to each other and began following him after he passed them. He also testified that a third vehicle which he could not identify arrived at the scene of his arrest. He stated that the occupant of that vehicle had with him a dog trained to sniff out narcotics and that the dog was used to detect the bag of marijuana, which defendant claimed he had shoved under the front seat of his vehicle. Defendant testified that after the dog found the marijuana, the dog and his handler got back into the unidentified vehicle and quickly left the scene.
ASSIGNMENT OF ERROR NO. 1
By this assignment of error defendant asserts that the trial court erred "in failing to suppress the marijuana and preventing its use in a trial on the merits hereof." More particularly, defendant asserts that the marijuana should have been suppressed because it was seized without a warrant and in violation of defendant's rights against unreasonable searches and seizures.
The Fourth and Fourteenth Amendments to the United States Constitution and Article I § 5 of the Louisiana State Constitution prohibit unreasonable searches and seizures. Generally, a search conducted without a warrant is per se unconstitutional. State v. Tant, 287 So.2d 458 (La.1973). A warrantless search is unreasonable unless *1221 the search can be justified by one of the exceptions to the warrant requirement. State v. Daigre, 364 So.2d 902 (La.1978); State v. Lain, 347 So.2d 167 (La.1977). The state bears the burden of proving that evidence seized pursuant to a warrantless search was taken under one of the exceptions to the warrant requirement. La.C.Cr. P. art. 703 D; State v. Daigre, supra; State v. Franklin, 353 So.2d 1315 (La. 1977). One such exception which is applicable to the instant case is the plain view doctrine.
In State v. Neyrey, 383 So.2d 1222 (La. 1979), the Supreme Court stated the elements of the plain view doctrine as follows:
"(1) A prior justification for an intrusion into a protected area;
(2) in the course of which evidence is discovered inadvertently,
(3) where it is immediately apparent without close inspection that the items are evidence or contraband,
(4) and exigent circumstances justify the police proceeding without a warrant. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Fearn, 345 So.2d 468 (La.1977)."
In the instant case the record reflects that Deputy McEntyre had a prior justification to be in the (assumed) otherwise protected area when he discovered the marijuana. Both Deputy McEntyre and Trooper McKee testified that the initial stop and detention of defendant was prompted by the officers' personal observations of defendant's erratic driving. Deputy McEntyre testified that once defendant's vehicle had been stopped in order to investigate this erratic driving, he exited his patrol unit and began walking toward the rear of defendant's vehicle, where defendant and Trooper McKee were already standing. He stated that as he passed defendant's vehicle on the driver's side, he stopped and glanced into the interior of the vehicle with the aid of his flashlight, observed the marijuana on the floor of the vehicle on the driver's side, and reached into the vehicle and seized it. Trooper McKee also testified that Deputy McEntyre's discovery of the marijuana occurred as he walked past the vehicle and that the contraband was seized by the officer reaching into the vehicle and taking the bag of marijuana out of the vehicle.
Defendant's testimony, as previously stated, conflicted greatly with the officers' accounts. While admitting that the marijuana was in the vehicle, defendant alleged that some unidentified person with a dog opened the door of his vehicle and allowed the dog to sniff for the marijuana, which was shoved under the front seat out of plain view. He also testified that he had no reason to take the marijuana out from under the seat because there was also a small bag of marijuana easily accessible over the sun visor on the driver's side of the vehicle.
In a criminal case, as in any other case, the determination of credibility is a function of the trier of fact. State v. Robertson, 421 So.2d 843 (La.1982). Whenever there is conflicting testimony as to factual matters, the question of credibility of witnesses is within the sound discretion of the trier of fact. A determination of credibility will not be reversed on appeal absent manifest error. State v. Tassin, 472 So.2d 340 (La.App. 3rd Cir.1985), writ denied 477 So. 2d 97 (La.1985). The trial court heard the testimony of the witnesses and had an opportunity to observe their demeanor during that testimony. Based on this, the trial court obviously chose to believe the account of events as related by the officers, rather than defendant's self-serving testimony. After a review of the record, we find no manifest error in this determination of the trial court.
Having found no error in the trial court's determination that the testimony of the officers was the true account of events, we further find that Deputy McEntyre had justification to illuminate the interior of defendant's vehicle with his flashlight. The two officers had just made a traffic stop on a dark highway in the early morning hours. Deputy McEntyre walked past defendant's vehicle in order to reach the area where defendant and Trooper McKee were already standing. While passing the defendant's vehicle, Deputy McEntyre had *1222 justification to determine whether any other persons were in the vehicle who could have presented a risk of harm to the officers during the course of their investigation and/or detention of the defendant for traffic violations. We note that objects observed by officers shining a flashlight into the passenger area of a vehicle are considered to be in open view for the purpose of the first element of the plain view exception to the warrant requirement for searches and seizures. State v. Schouest, 351 So.2d 462 (La.1977); State v. Bourg, 332 So.2d 235 (La.1976); State v. McGary, 397 So.2d 1305 (La.1981). The flashlight, under these circumstances, should be considered an illuminating safety device, not an inquisitive tool. State v. Ray, 471 So.2d 831 (La.App. 2nd Cir.1985), writ denied, 475 So.2d 364 (La.1985).
Further, the United States Supreme Court, in Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), found that the illumination of the interior of a vehicle by a police officer after a valid initial stop for a license check infringed on no right secured by the Fourth Amendment to the United States Constitution. The court stated:
"It is likewise beyond dispute that [Officer] Maples' action in shining his flashlight to illuminate the interior of [defendant] Brown's car trenched upon no right secured to the latter by the Fourth Amendment. The Court said in United States v. Lee, 274 U.S. 559, 563, 47 S.Ct. 746, 748, 71 L.Ed. 1202 (1927): `[The] use of a searchlight is comparable to the use of a marine glass or a field glass. It is not prohibited by the Constitution.' Numerous other courts have agreed that the use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection.5" (footnote omitted)
Thus, we find that the trial court properly concluded that Deputy McEntyre had prior justification to be in the area where he was when he discovered the bag of marijuana on the floor of defendant's vehicle. Further, the testimony of the two officers also establishes that the marijuana was discovered inadvertently, the second element of the plain view doctrine. Thus, the trial court properly concluded that Deputy McEntyre did discover the evidence inadvertently from an area where he had a right to be.
Defendant asserts that it was not "readily apparent" to Deputy McEntyre that the evidence seized was marijuana. As support for this assertion, defendant points to the testimony of Trooper McKee in which he stated that he did not know the exact length of time Deputy McEntyre shined his flashlight into defendant's vehicle, but estimated it was "probably 10 to 15 seconds at the most." First, we note that this estimate of time seems to be quite brief and would appear to fit easily under the characterization of "readily apparent" or "immediately apparent." However, even assuming that this was not the case, defendant's assertion lacks merit, since the "immediately apparent" element of the plain view doctrine first set out by the United States Supreme Court in Coolidge v. New Hampshire, supra, has been modified. This element has not been interpreted to require a showing that the observing officer could immediately, accurately, and positively identify the seized property as contraband or evidence of a crime. See Texas v. Brown, supra; State v. Knowles, 438 So.2d 648 (La.App. 2nd Cir.1983), writ denied, 442 So.2d 458 (La.1983). In State v. Evans, 441 So.2d 82 (La.App. 2nd Cir.1983), the court stated:
"Seizure of property in plain view by an officer who has the right to be where he is involves no invasion of privacy and may be found reasonable if there is probable cause to associate that property with criminal activity. Probable cause in such a situation is a `practical and non technical' probability that incriminating evidence is involved, determined by the totality of the circumstances confronting the officer."
In the instant case, the record reflects that Deputy McEntyre had prior justification to be where he was and that he inadvertently discovered the plastic bag containing a green leafy substance which he *1223 believed to be marijuana. This observation gave the officer probable cause to associate the plastic bag and its contents with criminal activity, since probable cause in such a situation is a "practical and non-technical" probability that incriminating evidence is involved. Thus, we find that the trial court correctly concluded that the "immediately apparent" element of the plain view doctrine was satisfied.
The record also reflects that the final element of the plain view doctrine was satisfied. There were exigent circumstances which justified Deputy McEntyre proceeding to seize the evidence without a warrant. At the time he discovered the plastic bag he believed to contain marijuana, Deputy McEntyre had no way of knowing whether or not defendant would be arrested for driving while intoxicated. Trooper McKee was administering a field sobriety test to defendant and Deputy McEntyre did not know what the outcome of that test would be. The defendant could have passed the test, gotten back into his vehicle, driven away, and disposed of the evidence before a warrant could be obtained.
For the foregoing reasons we find that the trial court did not err in failing to suppress the marijuana. Thus, we find this assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 2
By this assignment of error, defendant asserts that the trial court erred in allowing the State of Louisiana to refer "to other crimes that may have been committed by the defendant during the trial on the merits of this matter." In support of this assertion, defendant points to the testimony of Deputy McEntyre and Trooper McKee, in response to questioning by the state, regarding defendant's apparent intoxicated condition at the time his vehicle was stopped. Defendant contends that there was no reason for testimony relating to a suspicion of driving while intoxicated beyond the officers' statements relative to their observation of defendant's erratic driving, which defendant contends "would have established probable cause in the officer's minds." Defendant further asserts that "it can only be concluded that the further repeated testimony of the officers was used solely for the purposes of placing in the minds of the jury that the defendant was a `bad character' and should be convicted of some crime."
Defendant's conclusion that such testimony was only for the purpose of placing in the minds of the jurors that defendnt was a "bad character" is not the only possible conclusion that can be reached. Such testimony, although referring to a crime other than the one for which defendant was being tried, was not an impermissible reference to other crimes prohibited by La.C. Cr.P. arts. 770 and 771. Rather, the testimony was admissible because it was part of the res gestae of the crime for which defendant was being tried.
As stated in State v. Washington, 444 So.2d 320 (La.App. 1st Cir.1983), writ denied, 445 So.2d 450 (La.1984):
"What forms part of the res gestae is always admissible in evidence. LSA-R.S. 15:447. To constitute res gestae, the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction. LSA-R.S. 15:448. In Louisiana, the res gestae doctrine is broad and includes not only spontaneous utterances and declarations made before or after commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during or after commission of the crime, if the continuous chain of events is evident under the circumstances. State v. Kimble, 407 So.2d 693 (La.1981)."
In the instant case, the officers testified that when defendant exited his vehicle there was a strong odor of alcohol on his breath, his eyes were bloodshot, he was unsteady on his feet, and his speech was slurred. These actions and declarations by the defendant occurred while he was possessing marijuana. Thus, they were admissible under the res gestae doctrine at defendant's trial for possession of marijuana.
We find this assignment of error lacks merit.
*1224 ASSIGNMENT OF ERROR NO. 3
By this assignment of error defendant asserts that the trial court erred in denying defendant's motion to dismiss at the close of the state's opening statement to the jury because the state failed to articulate the charge against the defendant and the nature of the evidence by which the state expected to prove the charge.
La.C.Cr.P. art. 766 provides that the opening statement of the state shall explain the nature of the charge and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge. The closely related article, La.C.Cr.P. art. 769, provides that evidence which is not fairly within the scope of the opening statement of the state shall not be admitted into evidence. Further, it provides that if the state offers evidence that was inadvertently and in good faith omitted from the opening statement, the court, in its discretion, may admit the evidence if it finds that the defendant is not taken by surprise or prejudiced in the preparation of his defense. Together these two articles have been interpreted to mean that while the state must set forth its theory of the case in general terms, it need not necessarily state in detail every shred of evidence in its opening statement. It is sufficient for the state to give a general description of the evidence it plans to introduce. State v. Edwards, 406 So.2d 1331 (La. 1981), cert. denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982); State v. Behn, 445 So.2d 516 (La.App. 3rd Cir.1984).
In the instant case the state explained in its opening statement:
"... In this case the defendant is charged with possession of marijuana with the intention of distributing that marijuana.
* * * * * *
There are two kinds of evidence, and each kind will be involved in this trial. The first kind of evidence is direct evidence.... Circumstantial evidence is evidence of one fact from which you may infer another.
* * * * * *
The facts as to possession as you will hear are direct evidence facts. We will put on an expert from the Louisiana Crime Lab who will say: I did the test, that stuff is marijuana. We will put on evidence of the arresting officers who said: we arrested that defendant and he had this stuff within his possession. So that's direct evidence...."
The defendant contends that these statements by the state were insufficient to establish a prima facie case in the opening statement and therefore, the trial judge should have granted the motion to dismiss made by defense at the close of the state's opening statement. The trial court held that the state's opening statement was sufficient. Based on the previously noted portions of the state's opening statement, we find that this holding was correct.
We find this assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 4
By this assignment of error defendant asserts that the trial court erred by imposing a sentence on defendant which was unconstitutionally excessive, thus constituting cruel and unusual punishment under the Louisiana Constitution, and which was in violation of La.C.Cr.P. art. 894.1.
Following defendant's conviction on the charge of possession of marijuana, the trial court sentenced defendant to imprisonment for six months in the parish jail, the maximum allowable under La.R.S. 40:966.
A sentence is unconstitutionally excessive, in violation of Art. I § 20 of the Louisiana Constitution of 1974, if it is grossly disproportionate to the severity of the offense or nothing more than a needless infliction of pain and suffering. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Bonanno, 384 So.2d 355 (La.1980). Even sentences within statutorily mandated limits may be excessive. State v. Sepulvado, 367 So.2d 762 (La.1979). A trial judge is given wide discretion in the imposition of sentences within statutory limits. Absent a manifest abuse of that discretion, the sentence imposed by a trial judge should not be set aside as excessive. State *1225 v. Lanclos, 419 So.2d 475 (La.1982). In order to constitute an excessive sentence the penalty imposed must be so grossly disproportionate to the crime committed in light of the harm caused to society as to shock this court's sense of justice. State v. Cann, 471 So.2d 701 (La.1985); State v. Bonanno, supra. The statutory guidelines of La.C.Cr.P. art. 894.1 provide criteria by which the reviewing court can measure whether a sentence is excessive. State v. Sepulvado, supra; State v. Cox, 369 So.2d 118 (La.1979).
The trial court is required to state for the record both the considerations he has taken into account, and the factual basis, for imposition of sentence. La.C.Cr. P. art. 894.1; State v. Schaeffer, 414 So.2d 730 (La.1982); State v. Jackson, 360 So.2d 842 (La.1978). In order to comply with article 894.1, the sentencing court need not articulate every aggravating and mitigating circumstance in the article. However, the record must affirmatively reflect that adequate consideration was given to these codal guidelines in particularizing the defendant's sentence. State v. Smith, 433 So.2d 688 (La.1983); State v. Sims, 410 So.2d 1082 (La.1982). The requirements of article 894.1 are fulfilled when the record affirmatively shows that the trial court considered the statutory sentencing guidelines. State v. McDermitt, 406 So.2d 195 (La.1981); State v. Rainwater, 448 So.2d 1387 (La.App. 3rd Cir.1984). Important elements which should be considered include defendant's personal history, prior record, seriousness of the instant offense, and the likelihood of recidivism, or rehabilitation. State v. Soco, 441 So.2d 719 (La.1983), appeal after remand, 508 So.2d 915 (La.App. 4th Cir.1987); State v. Ezernack, 408 So.2d 907 (La.1981).
In the instant case, the trial court stated in its sentencing colloquy that it was obliged to go through the sentencing guidelines of article 894.1. The court then stated that it had listened to the testimony at trial based upon those guidelines. The court stated that the three criteria listed in article 894.1 which, if found, entitle a court to impose a sentence of imprisonment were present in this case. These factors are: that there was an undue risk that during the period of any suspended sentence or probation defendant would commit another crime; that defendant was in need of correctional treatment or a custodial environment; and that a lesser sentence would deprecate the seriousness of defendant's crime. Thus, it is evident that the trial court considered the three factors of article 894.1(A). The record reflects that the trial court was correct in finding these factors to be present.
Further, the court, throughout the sentencing colloquy, explained numerous reasons for the sentence imposed. Among those were:
(1) That defendant had presented himself to the court and jury as a full time user of marijuana.
(2) That defendant by his demeanor and testimony actually boasted of his ability to avoid arrests prior to this time.
(3) That defendant seemed to think the use of marijuana and the trial was a game.
(4) That defendant seemed to be proud of his association with illegal activity.
(5) That defendant indicated to the court that he had no remorse for his confessed twenty years of smoking marijuana nor the incident for which he was arrested, but seemed rather irritated that the court had inconvenienced him in the matter.
These statements by the court reflect that the court considered several of the mitigating factors enumerated in article 894.1(B.) and found them not to be present in this case. Among these are: that there were no substantial grounds tending to excuse defendant's criminal conduct; that defendant admittedly had a history of prior criminal conduct; that defendant's criminal conduct was not the result of circumstances unlikely to recur; that the character and the attitudes of defendant do not indicate that he is unlikely to commit another crime; and that the defendant is not particularly likely to respond affirmatively to probationary treatment.
*1226 Further, the testimony at trial revealed that defendant admitted to a prior conviction for possession of marijuana. It also revealed that defendant is 38 years old, unmarried, has no dependents, and although he has had several excellent jobs, has by choice never worked at any for any considerable period of time. This testimony shows that defendant has a prior conviction for the same offense, which thus increases the seriousness of the present crime. It further shows that imprisonment of the defendant would not entail excessive hardship to defendant or his dependents. Since the trial judge stated that he listened to the testimony at trial based on the guidelines of article 894.1, it is obvious that he considered these factors, also in sentencing the defendant.
Defendant's assertion that "the prevalence and seriousness of marijuana distribution and the trial court's personal attitude and policy regarding this offense dictated the sentence...." is unfounded. The record reflects that the trial court considered the statutory sentencing guidelines and that the trial court's sentence was particularized and individualized to this defendant.
An examination of the record leads us to conclude that the trial court did not manifestly abuse its discretion in sentencing the defendant for this crime to the maximum term of imprisonment. We do not find that the sentence is so disproportionate to the crime committed as to shock our sense of justice.
We find this assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 5
By this assignment of error, defendant asserts that he was not afforded effective assistance of counsel by his court appointed attorney at the trial level, submitting this issue to this court on the record.
Effective assistance of counsel does not mean errorless counsel, or counsel who may be judged ineffective on mere hindsight, but counsel reasonably likely to render and actually rendering reasonably effective assistance. State ex rel. Graffagnino v. King, 436 So.2d 559 (La 1983). A defendant who alleges that his counsel was ineffective must couple that allegation with a specific showing of prejudice. State v. Brogan, 453 So.2d 325 (La.App. 3rd Cir. 1984), writ denied 457 So.2d 1200 (La.1984). In the instant case, defendant has not shown that his defense counsel was ineffective or that he was prejudiced thereby. Further, a thorough review of the record reveals no such ineffectiveness or prejudice. We find this assignment of error lacks merit.
For the above and foregoing reasons, the conviction and sentence of the defendant are affirmed.
AFFIRMED.