565 So.2d 532 (1990)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION
v.
George MAYNARD, et al.
Nos. 89-CA-1790, 89-CA-1791.
Court of Appeal of Louisiana, Fourth Circuit.
June 28, 1990.
*534 Ronald J. Bertrand, Rayne, for plaintiff/appellant.
Randy Opotowsky, Steeg and O'Connor, New Orleans, for defendants/appellants.
Before CIACCIO, WILLIAMS and PLOTKIN, JJ.
CIACCIO, Judge.
In this expropriation suit, both the State and the property owners have appealed from the judgment of the trial court. For the following reasons, we amend and affirm.

FACTS
The State of Louisiana, through the Department of Transportation and Development (State), instituted these suits to expropriate portions of two adjacent tracts of land located in eastern New Orleans. The land was needed by the State as part of a project known as the Almonaster Interchange on State Route I-510 from St. Bernard Parish to the Interstate 10 intersection at Paris Road.
These subject properties are bounded generally by Paris Road, Old Gentilly Road, the proposed Bullard Road extension and the L & N Railroad. The smaller tract, which prior to any expropriations, was fronted on Paris Road, was purchased in 1977 by Mr. and Mrs. George Maynard from New Orleans Public Service, Inc., and is referred to herein as the NOPSI tract. The larger tract, which is located to the west of and adjacent to the NOPSI tract, was purchased by the Maynards and Mr. and Mrs. Henry Smith in 1980 from the Charbonnet family, and is referred to as the Charbonnet tract.
The record reveals that in 1968, the State of Louisiana announced a project to build what was known as the Dixie Freeway across the land owned by property owners. In 1976 or 1977, due to certain environmental problems, this proposal evolved into the construction of two spurs in the New Orleans area, one of which was labeled as I-510, known as the Almonaster Interchange. Part of the property owned by the Charbonnet family and the Maynards and Smiths was needed for the construction of a service road and drainage servitude for this project. In March 1979, George Maynard contacted the Department of Transportation and Development concerning his plans to develop and subdivide his property. The State informed Maynard at that time that they opposed any development of property within the State right of way, but that he was free to develop any of the lots outside of the proposed right of way. The right of way requirements at that time *535 were preliminary plans and had not yet been finalized.
In February 1980, upon request of the landowners, the State acquired certain portions of property from the NOPSI and Charbonnet tracts which would be needed for the project. Maynard and Smith subsequently purchased the remainder of the Charbonnet tract in March 1980. Following this initial expropriation, the State made some design changes in the project and found it necessary to expropriate additional areas of this property. The State then instituted the present proceedings in 1986 against the Maynards as owners of the NOPSI tract and against the Maynards and Smiths as owners of the Charbonnet tract to obtain the additional property. These two lawsuits were consolidated for trial.
An order of expropriation was signed by the court on December 19, 1986. On the same day, the State deposited into the registry of the Court the sum of $361,139.00 for the NOPSI tract and $679,339.00 for the Charbonnet tract, representing the State's estimated value of the land expropriated. After withdrawing the funds deposited, the property owners answered the petition of the State on September 30, 1987 and reconvened, claiming additional compensation as follows: 1) value of the land taken; 2) severance damages in the form of the cost to cure; and 3) loss of use/unreasonable delay damages.
Trial of this matter occurred on December 7, 12 and 13, 1989. At trial, the State presented the testimony of its expert appraiser. The property owners presented testimony from two expert appraisers. After taking the matter under advisement, judgment was rendered on February 23, 1989. The trial court found that additional compensation was due to the property owners for the value of the land taken over and above the amount deposited in the court registry. Neither the State nor the property owners appeal this part of the judgment, and it will therefore not be considered by this Court. The trial court also awarded the property owners damages in the amount of $313,632.00 for the NOPSI tract and $580,219.00 for the Charbonnet tract for the loss of use and unreasonable delay by the State in expropriating the property. Both the property owners and the State appeal this portion of the judgment. In addition, the property owners appeal that part of the judgment which denies them severance damages in the form of "cost to cure." The property owners also appeal the amount of attorney's fees awarded. Further, the State appeals from the trial court's calculation of attorney's fees and legal interest which were awarded to the property owners.
LOSS OF USE/UNREASONABLE DELAY
The property owners contend that the trial court erred in the method of calculating damages due for the loss of use of their property during the pendency of the State project. The State argues that damages for loss of use or unreasonable delay are not compensable, or in the alternative, that the property owners failed to meet their burden of proof to establish the alleged loss. We must first determine whether these damages are recoverable under Louisiana law.
It is now recognized that the Louisiana Constitution of 1974, Article 1, Section 4, effected substantial changes in expropriation law, requiring that a property owner in an expropriation proceeding be compensated "to the full extent of his loss." Under this current provision, the property owner cannot be limited to receiving the market value of the property taken and the severance damages to his remainder; rather, such an owner must be put in as good a position pecuniarily as he would have been had his property not been taken. State, Through Dept. of Highways v. Champagne, 356 So.2d 1136 (La.App. 3rd Cir. 1978); State, Through Dept. of Highways v. Constant, 359 So.2d 666 (La.App. 1st Cir.1978), affirmed and amended, 369 So.2d 699, 702 (La.1979).
The law as it stands now allows for compensation in areas that were not previously compensable. Based on this broadening of the constitutional requirements for measure of damages, the property *536 owner must now be compensated for any economic loss sustained as a result of the taking upon adequate proof of such loss. Id., 359 So.2d at 672. Certainly, if a property owner establishes damages resulting from loss of use, such loss may be compensated. We therefore conclude that damages suffered from the loss of use of property which has been taken out of commerce for an unreasonable length of time by an impending expropriation are recoverable. We must now determine whether the property owner herein has submitted adequate proof of such damage.
The record in the case under consideration establishes that the State first announced this project in 1968, and based on environmental problems and federal intervention, actual construction did not begin until 1988 and was expected to be completed by 1990-1991. The property owners contend that the State's inaction during this time caused a "chilling effect" which prevented the marketing or development of this property. In support of this position, Maynard points to his request to subdivide his property in 1979 and the State's response opposing any development in the proposed right of way. Maynard also argues that development of the property outside of the right of way would not have been prudent as the construction of the State project denied him access to his property until the completion of the service road. He further stated that he had marketed the property by selling two sites on the Charbonnet tract to truck lines and that he had attempted to subdivide and sell lots on the NOPSI tract that were not within the right of way.
John LeJeune, a real estate appraiser who testified as an expert for the property owners, stated that he believed that Maynard, as a prudent informed investor, was entitled as part of his damages to the increase in the dollar amount that he had invested in this land. He believed that Maynard was entitled to the rate of return he would have received had the money been invested in treasury bills. He testified he considered Maynard's history of successfully developing property and the fact that Maynard had very limited access to his property during this time period. LeJeune concluded that because Maynard was prevented by the impending expropriation and lack of access to the property from marketing or developing his property and moving on to another project, he suffered damages to the extent he did not reap the increase in the money he invested in the land.
On the issue of loss of use, the trial court stated in his reasons for judgment:
That damages was caused is beyond question; the calculation of such damage is very difficult. Because timely development has been frustrated, we cannot know how successful development would have been. But difficulty in calculation is no excuse to deny all recovery. I am required to do my best, being as fair as possible to both parties.
When highway construction denies access to adjoining landowners, the state routinely compensates them at a rate of 10% per year. Plaintiff equates his damages to the interest he could have earned on treasury bill. I believe there is a flaw in this approach.
There is always a rough parallel between interest rates and inflation. Plaintiff's property is inflation proof, in the sense that its price will rise with inflation, other economic factors being constant. The inflation component of the interest rate should therefore be deducted in calculating plaintiff's real loss. We must also consider the downturn in New Orleans' economy. I conclude plaintiff's damages should be calculated at 2% per year.
The NOPSI tract has been denied all access. Maynard will be compensated at a rate of 2% per year from his acquisition of this tract to date of completion, less the three years reasonably required for construction, or a loss of use of 9 years, based on $2.00 per square foot for a total of $313,632.00.
As to the Charbonnet tract, it was susceptible to some development because of access available at the southwest corner. Because of its size, the development *537 would take a considerable amount of time. For this reason damages will be calculated based on half of the acreage. I estimate delay damages to half of the Charbonnet tract at 2% per year, for 6 years, or $580,219.00
The court apparently believed that Maynard desired and was willing to develop this property but that his ability to market this property was severely restricted by the impending construction of this interchange and the limited access caused thereby. The record reveals that Maynard made several unsuccessful attempts to subdivide or sell portions of this property and that the only means of access to the property was through the southwest corner fronting on Old Gentilly Road. Under the circumstances presented here, we cannot say that Maynard's failure to develop the property was unreasonable. The trial court considered the fact that there was some access to the Charbonnet tract and adjusted the damage award accordingly. We are satisfied with the proof of loss and have no basis to disturb the court's factual findings.
Having made this determination, we turn next to the trial court's method of calculation of these damages. On appeal, the property owners contend that the court should have used the figures established by the expert witnesses of five-ten percent per annum rather than the two percent figure used by the trial Judge.
While the trial court may not substitute its own opinion for that of the experts who testified at trial when such testimony is based on sound reasoning, the court is not required to accept the precise amount of any expert. State, Through Dept. of Transp. & Development v. Van Willett, 386 So.2d 1023, 1028-29 (La.App. 3rd Cir. 1980), writ denied, 392 So.2d 692 (La. 1980). Further, it is well settled that much discretion is granted to the trial court in the evaluation of and weight to be given to the testimony of each expert witness, and the factual findings of the court should not be disturbed unless clearly erroneous. Id., at 1029.
The record reflects that the trial court carefully considered the damages suffered by the property owners as a result of the length of time they were unable to fully utilize this property. In arriving at a figure to compute these damages, the court considered the aspects of inflation, location of the property, possibility of future development and the status of the New Orleans economy. We conclude that the figures assigned by the trial court and the resulting damages adequately compensate the property owners for the full extent of the loss. Based on the evidence before us, we are unable to state that the findings of the trial court are clearly erroneous.
SEVERANCE DAMAGES IN THE FORM OF "COST TO CURE"
The property owners contend that they are entitled to severance damages in the nature of "cost to cure" as enunciated in State, Through Department of Highways v. Champagne, 371 So.2d 626 (La. App. 1st Cir.1979), writ granted in part, 375 So.2d 645 (La.1979), reversed in part on other grounds, 379 So.2d 1069 (La. 1980). They argue that the trial court erred in failing to make an award for the construction of three bridges to join the Charbonnet tract to the NOPSI tract. As part of this project, the State expropriated and built a 120 foot wide drainage servitude which divided the two tracts of land. Prior to the expropriation there existed an eight foot drainage ditch in this location. At this point, the property could have been consolidated by the installation of culverts at a nominal price.
However, the property owners contend that the remainder of the property after the expropriation of the drainage servitude has been damaged in that the property has been cut in two, and it is now necessary to travel around the canal to reach the adjoining tract. Maynard testified that he had intended to develop this property from east to west and that it was therefore necessary to build three bridges across this drainage servitude to tie these two tracts of land back together. As a result of the expropriation of this servitude, the property owners contend that they are entitled to severance *538 damages in the form of cost to cure the damage to the property in the amount of $187,000.00 for each bridge, a figure based on an estimate received from contractors of $240,000.00 for each bridge, less the amount it would have cost to install culverts. They contend that this amount would be less than the total damage to the property by the construction of the servitude.
It is well-settled that a landowner is entitled to recover for damages to the remainder of his property which are occasioned by the taking and are usually calculated as the difference between the value of the remaining property before and after the taking. State, Through Dept. of Highways v. Romano 343 So.2d 222 (La. App. 1st Cir.1977); State, Dept. of Highways v. Denham Springs Dev. Co., Inc., 307 So.2d 304 (La.1975). However, the burden of proving such damages rests with the landowner who must satisfy the same with legal certainty and a preponderance of the evidence. State, Through Dept. of Highways v. Levy, 242 La. 259, 136 So.2d 35 (1961).
After hearing the testimony of Maynard and all the experts, the trial court found that the construction of these bridges was not economically justified. Although Maynard had intended to develop the property from east to west, there is nothing in the record to indicate that the property could not be successfully developed from north to south which would obviate the necessity for the bridges. After the completion of the project, all of the property would have access to the service road. This is unlike the factual situation presented in Champagne, where the ditch which was built by the State isolated the tracts from the highway. Based on a thorough review of the record, we find no error in the findings of the trial court which state that the property owners have failed to demonstrate the necessity for linking the two properties, each of which has access to the service road and adequate plottage to allow for individual development. This argument is without merit.
ATTORNEY'S FEES
The trial court awarded attorney's fees of ten percent of principal and interest in favor of the property owners. The property owners object to the amount of attorney's fees awarded, arguing that the award should be increased to twenty-five percent. The State contends that the trial court erred in awarding attorney's fees on both the excess award and the accrued interest.
The award of attorney's fees in expropriation cases are governed by La.R.S. 48:453, Section E, which provides:
Reasonable attorney fees may be awarded by the court if the amount of the compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment. Such attorney fees in no event shall exceed 25% of the difference between the award and the amount deposited in the registry of the court.
The language of this statute indicates that the legislature intended such an award to be permissive. Further, in making such an award, the trial court is vested with much discretion and the award will not be disturbed in the absence of a clear abuse of that discretion. State, Through Dept. of Transp. & Development v. Frabbiele, 391 So.2d 1364 (La.App. 4th Cir.1980).
Factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge. State, Through Dept. of Transp. & Development v. Jacob, 491 So.2d 138 (La.App. 3rd Cir.), writ denied 496 So.2d 331 (La.1986).
The property owners contend that their award should be increased based on the complicated issues and extensive litigation involved. The trial court had the opportunity to evaluate the complexity of the *539 case, and the extent of the work performed. The trial court apparently also considered the value of the property and the amount of accrued interest.
The amount of attorney's fees awarded in this case, although not the maximum amount, appears to be reasonable in light of all of the circumstances. In considering that the property owners in this case received an aggregate excess award of $1,215,566 and the property was taken in 1986, over three and one-half years ago, a ten percent attorney's fee at this point in time, based on the excess award and accrued legal interest, would exceed one hundred and fifty thousand dollars. Under the circumstances presented, we find no abuse of the trial court's discretion in making this award.
With regard to the award of attorney's fees on the accrued interest as well as on the principal, Louisiana courts have held that such an award on the combined amount is proper. The State argues that the court should have awarded attorney's fees on the principal alone.
In support of its position, the State cites State, Through Dept. of Transp. and Development v. Taylor, 461 So.2d 1282 (La. App. 3rd Cir.), writs denied, 464 So.2d 1382, 1383 (La.1985). In that case, the court held that interest does not accrue on attorney's fees. This is the opposite of the situation presented here, and we find the Taylor case to be distinguishable from the instant case wherein the court awarded attorney's fees on the accrued interest.
The issue presented in the case before us was considered in East Baton Rouge Parish v. Hays, 527 So.2d 1088 (La. App. 1st Cir.), writ denied, 532 So.2d 152 (La.1988), wherein the court reasoned that under La.R.S. 48:453, attorney's fees are to be awarded on compensation, and under La.R.S. 48:455, compensation includes interest. The Court concluded therefore that attorney's fees may be calculated on the amount of principal and accrued interest. We find this rationale to be persuasive and hold that an award of attorney's fees which is calculated on the combined sum of the excess award and interest on that amount is proper.
LEGAL INTEREST
Finally, the State argues that the trial court erred in awarding legal interest from the date of the expropriation instead of from the date of demand for additional compensation made by the property owners.
The payment of interest in expropriation cases is governed by La.R.S. 48:455. Prior to the 1988 legislative session, that statute read as follows:
The judgment rendered therein shall include, as part of the just compensation awarded, legal interest on the amount finally awarded as of the date title vests in the plaintiff to the date of payment, but interest shall not be allowed on so much thereof as has been deposited in the registry of the court.
Under these provisions, title vests in the plaintiff on the day that the amount of the estimate of just compensation is deposited in the registry of the court. In this case, that date was December 19, 1986, and the trial court ordered legal interest to be paid from that date.
However, in 1988, La.R.S. 48:455 was amended to read as follows:
If the amount finally awarded for compensation exceeds the amount deposited, the judgment shall include legal interest on the excess from the date of legal demand until paid, but such interest shall not accrue on any award made for expert fees or attorney's fees prior to judgment.
The effective date of this amendment was September 8, 1988, and the judgment herein was rendered on February 23, 1989. The State argues that the amended provision of this statute was in effect on the date that the judgment was signed, and therefore interest should have only been awarded from the date that the property owners demanded additional compensation, and not from the date of the expropriation by the state.
In State, Through Dept. of Transportation & Development v. McClendon, 552 *540 So.2d 1220 (La.App. 5th Cir.1989), the Fifth Circuit, in a factual situation similiar to the one presented here, held that the 1988 amendment to La.R.S. 48:455 could be retroactively applied as it did not divest the property owners of any vested right to seek legal interest on any excess award. The amendment merely changed the date from which the interest would be calculated, thus making the change remedial in nature.
In the present case, the property was expropriated on December 19, 1986, the property owners filed an answer seeking additional compensation on September 30, 1987, and on February 23, 1989, the court awarded an excess over the amount that had been deposited in the registry of the court. The law which was in effect at the time the decision was rendered was La.R.S. 48:455, as amended in 1988 which provided for legal interest only from the date of legal demand and not from the date of the expropriation. We find that as was the case in McClendon, because the retroactive application of this statute only changes the date from which legal interest is calculated and would not alter any substantive rights of the property owner, it was the correct law to be applied to this situation. We therefore hold that the property owners were entitled to receive legal interest from the date of demand, or September 30, 1987.
For the reasons assigned, that portion of the trial court's judgment dated February 23, 1989 which reads "with interest from December 19, 1986" is amended to read "with interest from September 30, 1987, the date of the demand." In all other respects, the trial court's judgment dated February 23, 1989 is hereby affirmed. Each party is to bear its own costs of this appeal.
AMENDED AND AFFIRMED.