628 So.2d 38 (1993)
RED RIVER WATERWAY COMMISSION, Plaintiff-Appellant,
v.
Elizabeth Robinson FRY, et al., Defendants-Appellants.
No. 25,051-CA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1993.
Opinion Correcting Decision on Rehearing November 16, 1993.
*40 Donald G. Horton, Coushatta, for Red River Waterway Com'n.
Bethard & Davis by James G. Bethard, Coushatta, for Rex and Sandra Young.
William M. Comegys, III, Shreveport, for Elizabeth Robinson Fry.
Before MARVIN, C.J., and NORRIS and BROWN, JJ.
MARVIN, Chief Judge.
In this action to expropriate leased farmland by the Red River Waterway Commission, the commission and the lessees appeal a judgment awarding the lessees $125,066 for the taking of the lease and the lessee's business loss, plus $23,125 attorney fees.
The commission complains the award is too high and the lessees should recover only the value of the leasehold. The lessees complain they were not compensated for the value of a 1995 option to renew their lease of the expropriated property for five years, which they intended to exercise had not the property been taken. Lessees also complain of an inadequate attorney fee award and additionally seek attorney fees for work done on the appeal.
We amend the judgment to award the lessees damages for the unexercised 1995 option period, to reduce the amount awarded by the rent the lessees would have had to pay to rent this property from 1990 through 1999, and to increase the attorney fees for work on appeal.
We otherwise affirm the judgment as amended.

FACTS
Rex and Sandra Young first entered into a five-year lease on September 21, 1979, with Elizabeth Fry of about 2700 acres of Caddo Parish farmland bordering Red River. Mr. Young's business was clearing land and subleasing it to farmers. Young spent approximately $100,000 clearing and improving the leased land to increase the acreage suitable for row crop farming.
The lease stated that a reduction in rent would occur if any of the leased property was taken by eminent domain. The initial lease, which terminated December 31, 1984, gave the lessees an option to lease the property for an additional five-year period, ending December 31, 1989. The Youngs exercised this option.
*41 On September 30, 1985, the lease agreement was amended, granting the lessee the option to lease the property for two additional five-year terms, from January 1, 1990, to December 31, 1994, and from January 1, 1995, to December 31, 1999. The amendment stated,
In order to exercise the options, the Lessee need do nothing more than remain on the property and comply with the terms and conditions herein stated.
The amendment provided that the Youngs would pay rentals of $50,000 per year beginning in 1990, and $60,000 per year beginning in 1995.
On February 21, 1991, the commission filed the expropriation action, joining the landowner-lessor and her lessees, the Youngs, as defendants under L.R.S. 34:2301 et seq. The commission took 643.8 acres of the leased land, which included approximately 170 acres of cropland, from the area known as Cross Keys between La. Hwy. 1 and Red River.
Young had spent between $50,000 and $70,000 clearing and developing this area to increase the acres available for row crop production from 128 to 501. The Youngs subleased the Cross Keys farmland to Jessie and Danny Davis and received as rentals or income, $39,085 in 1987, $38,000 in 1988, and $38,000 in 1989. Upon learning that the property would be expropriated, the Davis brothers ceased leasing the property. In 1990, Louis Honc subleased the unexpropriated Cross Keys land and unsuccessfully attempted to farm it. The Youngs received $17,500 from Honc.
The commission deposited $25,300 into the registry of the court for the taking from the Youngs. The Youngs contend that they are entitled to $218,343 as full compensation, less the $25,300 already paid. Ms. Fry did not reduce Youngs' rent in accord with the eminent domain provision in the lease, notwithstanding the Youngs' request for reduction.
The trial court's judgment awarded the Youngs $125,066 for losses from 1990 to 1994, plus $23,125 for attorney fees, $9,845 for the Youngs' expert witness, and interest and costs. No award of damages was made for the loss of the 1995 option to renew because the trial court found such an award would be too speculative.

EMINENT DOMAIN
The commission contends the Youngs' claim for damages should be prohibited by C.C. Art. 2697 which states:
If, during the lease, the thing be totally destroyed by an unforseen [unforeseen] event, or it be taken for a purpose of public utility, the lease is at an end. If it be only destroyed in part, the lessee may either demand a diminution of the price, or a revocation of the lease. In neither case has he any claim of damages.
As mentioned, the eminent domain provision of the lease restates the substance of C.C. Art. 2697, but the provision provides as well that all damages awarded for the taking of the leased property shall belong to and be the property of the lessor and the lessee as his interest may appear. The commission argues this provision makes the matter of damages one between the lessor and lessee and not between the lessee and expropriating authority.
C.C. Art. 2697, in appropriate circumstances, may bar a lessee's damage claim against the lessor, but does not bar the lessee's claim against the condemnor for the constitutionally mandated "just compensation" for the taking. Holland v. State, Dept. of Transp., 554 So.2d 727 (La.App. 2d Cir. 1989), writ denied.
Moreover, the Fry-Young lease specifically contemplates that lessee, as well as the lessor, is entitled to "damages," as his interest may appear, from the expropriator. A lessee does not give up his right to claim constitutional compensation for the taking by agreeing to a self-destruct lease provision that merely restates the law governing the relationship between himself and his lessor. Holland, supra. We find the commission's contention to the contrary without merit.

CALCULATION OF LESSEES' DAMAGES
La. Const. Art. 1, § 4, requires that just compensation shall be paid to the property *42 owner when property is taken for a public purpose, and "the owner shall be compensated to the full extent of his loss."
A lessee is an "owner" of a property right and is entitled to recover his or her losses. State Dept. of Transp. & Development v. Jacob, 483 So.2d 592 (La.1986); Holland, supra; Packard's Western Store v. State, D.O.T., 618 So.2d 1166 (La.App. 2d Cir.1993). See also State, Dept. of Transp. & Dev. v. Exxon Corp., 430 So.2d 1191 (La.App. 1st Cir.1983), writ denied.
Contending the $25,300 it paid to the Youngs was in excess of that to which they were entitled, the commission submits the trial court did not employ the proper methodology of evaluating the leasehold interest, and the Youngs should receive compensation only for the leasehold advantage, which is the difference between the fair market value and the actual rental value of the property. The commission argues that the expropriated property was not unique and could be readily replaced.
Where economic losses suffered by a business have been proven, damages for incidental and consequential loss must be awarded to fully compensate the owner. The owner should be compensated for "his loss," not merely the loss of the land. State, DOTD v. Dietrich, 555 So.2d 1355 (La.1990). A lessee's business losses, if proved to have been caused by the state's taking or damaging of property, are compensable under the "full extent of the loss" constitutional measure of recovery. Packard's Western Store, supra.
Damages for expropriation are to be awarded according to the highest and best use of the property. State DOTD v. Brookhollow of Alexandria, 578 So.2d 558 (La.App. 3d Cir.1991), writ denied.
Various methodology may be employed to prove economic loss which may exceed the market value of the property. Dietrich, supra; Brookhollow, supra. An owner cannot be limited to receiving the market value of the property taken and the severance damages to his remainder; rather, such an owner must be put in as good a position pecuniarily as he would have had his property not been taken. State through Dept. of Highways v. Constant, 369 So.2d 699 (La.1979); Packard's Western Store, supra; State, Dept. of Transp. v. Maynard, 565 So.2d 532 (La.App. 4th Cir.1990), writ denied, overruled on other grounds, 572 So.2d 39 (La.1990).
The method employed to prove the loss must demonstrate by a preponderance of the evidence that actual loss was not general, as to all owners in the area, but was specifically sustained because of the taking from the business in question. See Brookhollow, supra. The determination of what amount will compensate property owners must be made on the basis of the facts of each case and in accord with the uniqueness of the thing taken. State, Dept. of Transp. & Devel. v. Pipes, 489 So.2d 293 (La.App. 4th Cir. 1986), writ denied. Such findings by the trial court will not be disturbed absent manifest error. Naquin v. Dept. of Transp. and Dev., 604 So.2d 62 (La.App. 1st Cir.1992), writ denied.
The parties stipulated to the amount this property produced as income for each of the three years before the expropriation, approximately $38,000 per year. The commission contends nothing was introduced which would indicate there was a reasonable expectation of receiving this amount in the future had the expropriation not occurred, emphasizing that numerous people had unsuccessfully attempted to farm this property and that some portions of the premises never achieved the status of being economically feasible, prime cotton farmland.
When an expert's well-reasoned testimony supports an award of damages and is accepted by the trier of fact, the property owner should prevail. Dietrich, supra; Naquin, supra. While the trial court may not substitute its own opinion for that of the experts who testified at trial when such testimony is based on sound reasoning, the court is not required to accept the precise amount suggested by any expert. Brookhollow, supra; Maynard, supra.
Much discretion is granted to a trial court in the evaluation of and the weight to be given testimony of each expert witness, *43 and to make factual findings which an appellate court should not disturb unless it is demonstrated that the findings are clearly erroneous. Brookhollow, supra.
Two state-certified real estate appraisers, James Young and Darrel Willett, evaluated the property on behalf of the commission. James Young initially concluded that the Youngs' losses amounted to $25,300, but later decreased his figure to $7,906. Darrel Willett first appraised the Youngs' losses at $15,977, but later increased the losses to $18,232. These appraisers reappraised the property after considering information they explained was not initially available to them.
These experts considered the impact of federal farm programs on the lease of farmland. James Young did not include an amount for excess rental value in his appraisal because the durability or continuity of that income was uncertain.
The commission submits the testimony of the Youngs' expert witness, Dr. Stevens, should be disregarded because he ignored the accepted methodology of determining losses suffered by the lessees. We disagree.
Dr. Stevens, who qualified as an expert in farm management, agronomy, and real estate appraisal, testified the taking removed the most valuable prime crop land, leaving remaining land that was only suitable as pasture land, worth only about $5,000 per year. An unsuccessful attempt to farm the remaining Cross Keys was made in 1990. The prime farmland that remains exists in small fields which are not practical to farm. The commission's witness, Willett, admitted "the potential for crops is fair but the potential for pasture is good."
Dr. Stevens concluded that the Youngs suffered a $20,500 loss the first year after the taking, and a total discounted loss during the remaining term of the lease was $218,343. The amount of these losses are based on Dr. Stevens' conclusion that the Youngs would have continued to earn at least $38,000 per year as income on this property but for the expropriation. The income they would have received is best reflected by the income they received in the years immediately prior to the taking.
The trial court accepted the testimony of Dr. Stevens, and found that the Youngs lost $20,500 in income in 1990 and $33,000 in 1991, 1992, 1993, and 1994. We do not find the trial court was clearly wrong in this determination.

COST OF LEASE
The commission contends the amount awarded to the Youngs by the trial court erroneously fails to consider what it cost the Youngs to lease the expropriated portion of the property. James Young testified that the portion of the $50,000 yearly rent between 1991 and 1995 attributable to the expropriated property would be $13,097. The trial court obviously accepted this figure, stating:
[T]he proportionate cost of the leased property remaining (sic) is shown by the evidence to be $13,097 per year for 1991 through the crop year of 1995.
Notwithstanding its specific mention of the $13,097 per year cost through the year 1994, the trial court apparently inadvertently overlooked applying this figure in computing the award. The commission is entitled to have the judgment reduced by the amount the Youngs would have paid to lease the expropriated property each year, $13,097 per year from 1990 through 1994, and $15,600 per year from 1995 through 1999. We shall amend to make the adjustment.

ADDITIONAL OPTION PERIOD
The trial court stated:
The proof of value of the option to renew in 1995 is speculative and no damages are awarded for the loss of the option.
Mr. Young testified he intended to exercise his five-year option in 1995 because in his "unique" situation, having spent money to improve the land, he and his wife desire to recoup their expenses even though the commission has taken part of the property.
We addressed whether a lessee may recover business losses beyond the lease term in Packard's Western Store, supra.
While it is true that a business lessee's right to possess the property depends on the existence of a lease, where the landowner's *44 does not, we decline to say that a lessee may never recover business losses beyond the expiration of the lease term...
618 So.2d at 1173
We concluded the trial court did not err in charging the Packard jury that:
[Lessee] may recover business losses after the expiration of its lease upon proof by a preponderance of the evidence that [lessee] had an option or reasonable expectation that its lease would have been renewed for some reasonable time period.
In the instant case, the Youngs had earlier exercised two five-year options to renew their lease. Based on Rex Young's testimony that he intended to exercise the 1995 option to renew, and on the amount the Youngs spent to improve the property, we find the Youngs proved by a preponderance of the evidence that they would exercise the 1995 option. We shall amend the judgment to allow the Youngs to recover their business losses through December 31, 1999.

ATTORNEY FEES
The Youngs claim they are entitled to 25 percent of the difference between the amount deposited with the court and the amount awarded. They also claim they are entitled to attorney fees arising out of this appeal.
The award of attorney fees in expropriation cases is governed by L.R.S. 48:453 E:
Reasonable attorney fees may be awarded by the court if the amount of the compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment. Such attorney fees in no event shall exceed twenty-five percent of the difference between the award and the amount deposited in the registry of the court.
An award of attorney fees under this article is permissive. Brookhollow, supra. The trial court is vested with much discretion, and the award will not be disturbed in the absence of a clear abuse of that discretion. Brookhollow, supra; Maynard, supra.
The trial court granted the Youngs' claim for attorney fees, and ordered their attorney to file an affidavit for time expended on this matter. The trial court awarded the Youngs $23,125 for attorney fees. We do not find this to be an abuse of discretion simply because it does not amount to 25 percent of the difference between the award and the amount deposited into the registry of the court.
Considering the record, the briefs and the argument, we shall amend the judgment to increase the attorney fees by $1,800 for work on appeal. Compare Brookhollow, supra, where the award and the fee for work on appeal were greater.

CONCLUSION
We amend the trial court judgment to award the lessee damages for the second option period 1995-1999, and to reduce the amount awarded to the lessees by the cost of leasing the expropriated property, as follows:

 INCOME LEASE LESSEES' DISCOUNTED
YEAR LOST less COST equals LOSS 5% per year
1990 $20,500 $13,097 $ 7,403 $ 7,403.00
1991 $33,000 $13,097 $19,903 $ 18,907.85
1992 $33,000 $13,097 $19,903 $ 17,912.70
1993 $33,000 $13,097 $19,903 $ 16,917.55
1994 $33,000 $13,097 $19,903 $ 15,922.40
1995 $33,000 $15,600 $17,400 $ 13,050.00
1996 $33,000 $15,600 $17,400 $ 12,180.00
1997 $33,000 $15,600 $17,400 $ 11,310.00
1998 $33,000 $15,600 $17,400 $ 10,440.00
1999 $33,000 $15,600 $17,400 $ 9,570.00
 ___________
 $133,613.50
Less amount deposited: $ 25,300.00
 ___________
 $108,313.50

*45 We further amend to additionally award $1,800 for attorney fees for work on appeal.

DECREE
At the commission's cost as allowed by law, and as amended, the judgment is AFFIRMED.

PER CURIAM GRANTING IN PART DEFENDANTS' APPLICATION; DENYING PLAINTIFF'S APPLICATION
We grant the rehearing application of Rex and Sandra Young to amend or correct awards or erroneous credits allowed in the original opinion.

COST OF LEASE
The Commission's original brief contended that the amount awarded to the Youngs by the trial court failed to consider the $13,097 annual rent the Youngs were obligated to pay for their lease of the expropriated property. We agreed with that contention.
We reduced the Youngs' award by $13,097, the annual rental used by the trial court, for the years 1990 through 1994, and by $15,600, the annual rental for the years 1995 through 1999. The Youngs' rehearing petition correctly states that $13,097 was the annual rental attributable to the entirety of the leased property east of La. Highway 1, only a part of which, however, was expropriated.
The record clearly shows that the annual rent attributable to the expropriated property for the years 1991 through 1994 is $7,379, and for the years 1995 through 1999 is $8,855.
On rehearing, we reduce the award to the Youngs only by the above stated amounts that are attributable to the lease obligation for those years on the property expropriated, as distinguished from the entirety of the property east of Hwy. 1.

AMOUNT CREDITED TO THE COMMISSION
In our original opinion, we credited the commission with the total $25,300 deposited into the registry of the court for the Youngs. On rehearing, we note that the Commission's petition for expropriation distinctly states:
That plaintiff valued leasehold interest owned by Rex L. Young and Sandra Outlaw Young for the agricultural lease set forth above to be the total of ... ($25,300.00)... of which sum $12,450.00 represents Lessees' losses due to the taking by Vendee herein and $12,850.00 represents Lessees' damages for loss of land taken by Vendee herein.
The rehearing application correctly states that only the amount for the lessees' losses, $12,450, should have been credited to the Commission. Accordingly, we shall amend on rehearing our original opinion so as to allow credit only for the $12,450 deposited for the lessees' losses.

CONCLUSION-DECREE
Having also considered the Commission's application for rehearing, we deny that application. Having granted in part the application for rehearing filed by the Youngs, we recast, or amend in part, the judgment in our original opinion to reflect these corrections:

 INCOME LEASE LESSEES' DISCOUNTED
YEAR LOST less COST equals LOSS 5% PER YEAR
1990 $20,500 $7,379 $13,121 $ 13,121
1991 $33,000 $7,379 $25,621 $ 24,340
1992 $33,000 $7,379 $25,621 $ 23,059
1993 $33,000 $7,379 $25,621 $ 21,778

*46
1994 $33,000 $7,379 $25,621 $ 20,497
1995 $33,000 $8,855 $24,145 $ 18,109
1996 $33,000 $8,855 $24,145 $ 16,902
1997 $33,000 $8,855 $24,145 $ 15,694
1998 $33,000 $8,855 $24,145 $ 14,487
1999 $33,000 $8,855 $24,145 $ 13,280
 ________
 $181,267
Less amount deposited for property taken: $ 12,450
 ________
 $168,817

As thus corrected or amended in this per curiam on rehearing, our original opinion is reinstated. The awards of attorney fees, here and below, are not disturbed and in all other respects the applications for rehearing are denied.