559 So.2d 787 (1990)
STATE of Louisiana, through the DEPARTMENT OF HIGHWAYS
v.
ENSERCH CORPORATION.
No. CA890023.
Court of Appeal of Louisiana, First Circuit.
February 21, 1990.
Rehearing Denied May 15, 1990.
*788 Frederick Fusilier, Office of Gen. Counsel, Baton Rouge, for plaintiff and appellant, Dept. of Highways.
Jerry Jordan, New Orleans, for defendant and appellant, Enserch Corp., Successor of Gibson Autin, Jr.
Before EDWARDS, LANIER and FOIL, JJ.
EDWARDS, Judge.
Plaintiff, the State of Louisiana, through the Department of Highways (now known as the Department of Transportation and Development), obtained an order of expropriation on September 20, 1976, under LSA-R.S. 48:441, et seq., the "quick taking" statute. Plaintiff deposited $43,046.00 into the registry of the court for just compensation. The Terrebonne Parish land was expropriated for the construction of a bridge across the Intracoastal Waterway. The defendant, landowner, filed an answer and asked for damages in excess of the amount deposited in the registry of the court.
During the trial, defendant moved to have Enserch Corporation (Enserch) recognized as the proper party defendant and the successor in interest of previous landowners and lessees of the property. The plaintiff did not object. From a judgment in favor of Enserch in the sum of $178,116.27, the plaintiff and defendant appeal. We amend the judgment of the trial court, and as amended, we affirm.
The issues on appeal are the abandonment of the action for additional compensation, the amounts of compensation damages, *789 and the calculation of the damages and attorney's fees.

ABANDONMENT
No action was taken in the suit by either party between 1980 and October, 1986. On October 2, 1986, the defendant filed a motion to compel answers to interrogatories that had been filed by defendant in 1979. The plaintiff filed answers to the interrogatories on November 10, 1986. On December 19, 1986, plaintiff joined the defendant in a motion to continue a rule to show cause. On March 4, 1987, defendant, Enserch, filed a motion to set for trial. The trial court, on March 5, 1987, set the trial for September 21, 1987. On March 12, 1987, plaintiff moved to dismiss the suit for additional compensation, with prejudice, on the grounds of abandonment of the action for five years.
LSA-R.S. 48:452.1 provides that if the party seeking additional compensation, in this case the defendant, Enserch, "fails to take any step in the prosecution of that claim for a period of five years," the claim is abandoned. The Louisiana Supreme Court has adopted a jurisprudentially created rule that recognizes two exceptions to the rule of five-year abandonment. Chevron Oil Co. v. Traigle, 436 So.2d 530, 533 (La.1983).[1] The exceptions arise (1) when the failure to prosecute was caused by circumstances beyond the plaintiff's control, and (2) when the defendant waived his right to plead abandonment by taking any action in the case, appearing on the face of the record, inconsistent with an intent to treat the demand as abandoned. Chevron, 436 So.2d at 533. The Supreme Court left open the question of what would constitute a waiver of the claim of abandonment, short of submission of the case. Chevron, 436 So.2d at 535. The filing of the detailed answers to interrogatories by plaintiff served to facilitate judicial resolution of each dispute on the merits and exhibited a willingness to achieve judicial resolution of the dispute. See Middleton v. Middleton, 526 So.2d 859, 861 (La.App. 2nd Cir.1988). Plaintiff acted in a way that was inconsistent with an intent to treat the case as abandoned, and, therefore, waived its right to have the case dismissed.

COMPENSATION
Plaintiff alleges several errors were made by the trial court in its award of compensation. Plaintiff specifically attacks the award of $10,406.00 for severance damage to the land and for $24,761.74 for the actual cost of tearing down the front portions that were taken off the Gulf States and D & G buildings.[2]
Defendant's expert, Lennis X. Lamulle, a real estate appraiser, provided the $10,406.00 figure based on the loss of the value of the site not taken caused by the taking of the front portion and the diminished *790 access to the property from the placement of the bridge supports. Invoices were offered by defendant to show the actual cost of tearing down the portions taken and resurfacing the remaining portions of the two buildings. Plaintiff's experts testified that there was no severance damage to the land itself and submitted lower estimates of what it should cost to tear down the front portion of the D & G building and the Gulf States building.
In expropriation proceedings, the trial court's factual findings as to severance damages, the evaluation of the testimony of expert witnesses, and the weight given to the testimony, will not be disturbed on review absent a showing of manifest error. Pointe Coupee Elec. Mem. Corp. v. Mounger, 447 So.2d 1104, 1110 (La.App. 1st Cir.1984). The trial court accepted the testimony and valuations of Enserch's expert and the invoice totals for the actual cost. The trial court's decision was based on expert testimony substantiated by the appraisal report and on invoices of the actual costs involved submitted by defendant. The plaintiff did not attack the invoices as being incorrect or invalid. The trial court did not commit manifest error in its award for severance damages.
Plaintiff complains that the trial court awarded to the landowner damages incurred by former lessees of the property, Gulf States and D & G. Plaintiff does not attack any specific award in the section of its brief covering this argument. Enserch asserts that it is the successor in interest of the previous landowners and lessees through various mergers and acquisitions.
When property interests are damaged, the lessees have the right to bring an action for compensation for the taking by the state of the lessees' interests. This is true even though the lease has not been recorded. State, Department of Transportation and Development v. Jacob, 483 So.2d 592, 595 (La.1986).
At trial, plaintiff stated that it agreed and did not object to the substitution of Enserch as the proper party defendant or defendant's representation as the successor in interest to the landowners and lessees affected by the expropriation. Therefore, the owners and lessees were represented in the action by defendant, and the court did not err in awarding damages incurred by the lessees to Enserch.
The Plaintiff next alleges that the defendant was enriched by the awards rather than compensated. In its brief, plaintiff specifically argues that the court awarded sums for the building of additional office space that had been lost from the Gulf States and D & G buildings and awarded an amount for the portion of the building taken. Enserch argues that the concept of "just compensation" has been expanded by the 1974 Louisiana Constitution, and the owner must now be compensated to the full extent of his loss. The amounts awarded were (1) the costs of tearing down the lost office space, and (2) the costs of replacement. This was not a duplication of awards for the lost office space.
The trial court awarded the amounts actually expended on tearing down the taken portions of the two buildings and resurfacing the fronts. These sums, $8,682.40 for D & G and $16,079.34 for Gulf States, were not awarded as the replacement costs for the taken buildings. The court awarded $36,809.66 as the actual cost of replacing the Gulf States building and $22,400.00 as the estimated replacement cost for the lost D & G office space.
The Louisiana Constitution of 1974, article 1 § 4, and LSA-R.S. 48:453(C) require the owner to be compensated to the full extent of his loss. The award should be sufficient to restore the business facilities to their condition prior to the taking, even when the required amount is in excess of the market value. State, Department of Highways v. Constant, 369 So.2d 699, 702-03 (La.1979). The trial court did not err by granting compensation for both the tearing down costs and for replacement costs.
Enserch submitted invoices showing the actual cost of rebuilding the lost office space in the Gulf States building. Plaintiff's experts provided a much lower estimate based on a state cost estimator's previous *791 calculations and national standard appraisal tables for both buildings.
The owner of expropriated property is not prohibited from testifying as to value merely because of the fact of ownership. However, the owner's values must be based on adequate proof. State, Department of Highways v. Allen, 422 So.2d 1368, 1370 (La.App. 1st Cir.1982).
The trial court accepted the invoice figure for the actual cost of replacement of the Gulf States office space and awarded $36,809.66. Plaintiffs did not attack the validity or reasonableness of the invoices for the replacement costs of the Gulf States building. Even though the cost was in excess of the market value, the court was not clearly wrong in accepting the invoice figure. However, there is a mathematical error in the addition. The total of the invoices relating to the Gulf States construction in 1979 was $14,541.63, and the total for 1980 was $21,267.95. The correct total of the invoices is $35,809.58.
Former officers of the Livingston Corporation, a predecessor in interest to Enserch and the parent corporation of Gulf States and D & G, testified to a figure of $40.00 per square foot for the replacement cost of the lost D & G office space. Mr. Morgan McCall, the former president of the Livingston Corporation, testified that he got that figure from two architects he consulted for the square footage price required to build "nice office space, air conditioned, heated, and properly appointed...." McCall calculated the D & G replacement cost as $40.00 per square foot multiplied by 560 square feet. The defendant's own expert, Mr. Lamulle, testified that, based on a local contractor's figures, the estimated reproduction cost of the lost portion of the D & G building was $22.50 per square foot, which included a deduction for depreciation. Mr. Lamulle measured the taken portion of the Gulf States building as 560 square feet and the D & G building as 480 square feet.
The trial court accepted the figure submitted by Enserch of $40.00 per square foot and calculated the replacement cost of the D & G office space based on 560 square feet. However, defendant's expert had testified that he measured the portion taken from the D & G building as 480 square feet. Plaintiff's experts submitted lower figures for both buildings, but the lost D & G space was the smaller of the two. Apparently, the trial court used the Gulf States square footage in error. This was possibly confusing because of Mr. McCall's use of the erroneous measurement.
The court may use documented valuations supplied by the owners. See Allen, 422 So.2d at 1370. However, it is error for the trial court to rely, to the exclusion of qualified experts, on the subjective testimony of the owner without a sound basis for his opinions. Allen, 422 So.2d at 1370.
The value accepted by the trial court is not supported by the evidence. Because the trial court accepted Mr. Lamulle's appraisal for most of his findings, we will accept the value of $22.50 as the squarefoot replacement cost of the portion taken from the D & G building. Mr. Lamulle's figures included a deduction for depreciation. This was appropriate because the D & G building was older and not in the same condition as the Gulf States building. Therefore, the correct amount for the replacement cost is calculated as $22.50 multiplied by 480 square feet, for a total of $10,800.00.
Plaintiff objects to the award of business losses to defendant for lost profits and for repairs and increased maintenance on vehicles caused by the construction of the bridge. The trial court awarded $40,000.00 for lost profits resulting from the inability of D & G to operate its machine shop at full capacity for a period of time during the construction. For damage to vehicles and extra maintenance incurred by defendant as a result of the construction, the trial court awarded $20,000.00.
The amount of loss was testified to by former officers of the Livingston Corporation. Robert Ocker, the former comptroller and chief financial officer of the corporation, gave the most detailed testimony. However, the figures were admittedly based on estimates of the previous year's *792 gross income, estimates of the amount of outside business lost in the relevant year, and estimates of the amount of profits derived from those figures. No documentary evidence of any kind was presented. Mr. Ocker admitted that the amount of damage to vehicles was based on "questimates," and no records were kept at the time.
An award for business losses may be made that would permit the landowner to retain equivalent financial circumstances after the taking, but the award must be based on adequate proof. State, Department of Transportation & Development v. Tynes, 433 So.2d 809, 817 (La.App. 1st Cir.), cert. denied, 437 So.2d 1153 (La. 1983). The amounts submitted by the former Livingston officers were too speculative and not supported by adequate proof. The trial court's awards for business losses were clearly wrong.

CALCULATIONS OF COMPENSATION OWED AND ATTORNEY'S FEES
The plaintiff asserts that the trial court did not properly credit the plaintiff with the amount of $43,046.00 already received by the defendant and did not correctly calculate the attorney's fees.
This argument has no merit. In the trial court's written reasons for judgment, the court's calculations include a credit to plaintiff for the money paid to defendant out of the registry of the court. The trial court awarded attorney's fees of 25% of the difference between the total award and the original deposit. LSA-R.S. 48:453(E) provides for such an award.
For the reasons assigned, the judgment of the trial court is amended to reduce the total amount of the award for just compensation to the sum of $112,938.94. After deducting the deposit, the additional compensation due is $69,892.94. The attorney's fees awarded by the trial court of 25% of the difference between the total award and the deposit becomes $17,473.23. By adding the additional compensation and the attorney's fee, the total award to plaintiff equals $87,366.17. In all other respects, the judgment of the trial court is affirmed. The costs of the proceedings is fixed in the amount of $2,090.19, which includes the trial court and appeal costs. These costs are taxed to the State of Louisiana, through the Department of Transportation and Development.
AMENDED AND AFFIRMED.
LANIER, J., dissents and assigns reasons.
LANIER, Judge, dissenting.
This action is an expropriation by a declaration of taking (quick taking) as provided for in La. Const. of 1974, art. I, § 4 and La.R.S. 48:441 et seq. The defendant did not contest the validity of the taking and waived all defenses except its claim for increased compensation. La.R.S. 48:447. On motion of counsel for the defendant, the trial to determine just compensation was fixed for September 30, 1980. On September 11, 1980, on motion of counsel for the defendant, the trial was continued without date. On October 2, 1986, counsel for the defendant filed a motion to compel answers to interrogatories which was fixed for hearing on November 14, 1986. On November 10, 1986, DOTD filed an answer to the interrogatories. On November 14, 1986, the trial court, on its own motion, ordered the hearing on the motion to compel continued without date. On December 11, 1986, the defendant filed a motion to substitute party defendant which was fixed for hearing on December 19, 1986. On December 19, 1986, by joint motion of counsel, this hearing was continued without date. On March 4, 1987, the defendant filed a motion to fix for trial. On March 5, 1987, the trial court fixed the trial on September 21, 1987. On March 12, 1987, DOTD filed the motion to dismiss the claim for increased compensation, as provided for in La.R.S. 48:452.1.
La.R.S. 48:452.1(A)[1] provides as follows:

*793 An owner's claim for an increase in the compensation is abandoned when he fails to take any step in the prosecution of that claim for a period of five years. This provision shall be operative without formal order, but on ex parte motion of the department the trial court shall render final judgment fixing just compensation in the amount deposited in the registry of the court and awarding that sum to the defendant and dismissing with prejudice any claim for any increase in compensation. (Emphasis added)
The word "shall" is mandatory when it is used in the Revised Statutes. La.R.S. 1:3.
At the time[2] DOTD filed its motion to dismiss Enserch's petition to increase compensation for abandonment, La.C.C.P. art. 561(A) provided as follows:
An action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of five years, unless it is a succession proceeding:
(1) Which has been opened;
(2) In which an administrator or executor has been appointed; or
(3) In which a testament has been probated.
This provision shall be operative without formal order, but, on ex parte motion of any party or other interested person, the trial court shall enter a formal order of dismissal as of the date of its abandonment. (Emphasis added)
To support their interpretation of La.R.S. 48:452.1, the majority rely (by analogy) on two cases which interpreted La.C.C.P. art. 561, namely Chevron Oil Company v. Traigle, 436 So.2d 530 (La.1983) and Middleton v. Middleton, 526 So.2d 859 (La. App. 2nd Cir.1988). In Chevron Oil Company, 436 So.2d at 531, 533 and 535, the court found a waiver of the right to claim an abandonment under Article 561 with the following rationale:
The issue presented by this case is whether submission of an already abandoned suit for decision constitutes a waiver by the defendant of his right to seek a dismissal for failure to prosecute under article 561 of the Code of Civil Procedure. The trial judge answered this question in the negative and dismissed the plaintiffs' suits. The court of appeal affirmed. 424 So.2d 1221 (La. App. 1st Cir.1982). We reverse. The filing of cross motions for summary judgment constitutes a waiver by the defendant of his right to have the suit dismissed as abandoned.
. . . . .
We conclude that the trial judge was correct in observing that each of the cases had already been abandoned when they were presented to him for consolidation, transfer and summary judgment on December 16, 1981. The four suits were abandoned on April 20, 1981, August 21, 1979, July 26, 1981 and July 26, 1981, respectively. Therefore, the defendant had the right to file a motion to have each of these suits declared abandoned for failure to prosecute under article 561 of the Code of Civil Procedure. The record reveals, however, that the defendant did not file his motions to dismiss until after he had joined in the filing of a motion for summary judgment and stipulations of fact. The filing was accompanied by memoranda supporting the motion in each party's favor. We consider the filings of December 16, 1981 sufficient to constitute submission of the case for decision. See La.Code Civ.P. arts. 966 & 968. Cf. art. 1637. The issue before us, therefore, is whether the submission of these already abandoned cases by the defendant constituted *794 a waiver of his right to have the suits declared abandoned and therefore dismissed.
. . . . .
Without passing on the validity of the Melancon dicta for any action by the defendant short of submission of the case for decision, we conclude that submission of an abandoned case for decision effects a waiver of the right to have the suit dismissed because of want of prosecution under article 561 of the Code of Civil Procedure. The concept of abandonment is not punitive in nature. The notion is one which is designed to discourage vexatious, harrasing [sic] or frivolous suits by preventing the plaintiff from allowing such suits to linger indefinitely. Moreover, the threat of abandonment serves to hasten all suits to judgment. Once a case is submitted, its disposition is out of the hands of the parties, and nothing is gained by penalizing them for what they have failed to do before that point. (Emphasis added)
Middleton was a suit to partition community property filed by the wife. A curator was appointed, who answered for the husband. More than 5 years then elapsed in the proceedings. The husband then retained counsel who: (1) withdrew the curator's answer, (2) answered the original petition, (3) filed a reconventional demand, (4) answered interrogatories, and (5) filed interrogatories and requests for documents. Thereafter, the husband moved to dismiss the wife's partition suit as abandoned. In Middleton, 526 So.2d at 861, the court found that the trial court erred in dismissing the wife's main demand with the following rationale:
A dismissal of Ms. Middleton's principal demand would not affect Mr. Middleton's reconventional demand. CCP Art. 1039. Moreover, the Civil Code suggests that a co-owner's right to partition a thing held in common should not prescribe as long as the "community" or thing held in common is either acknowledged or proved (CC Art. 1304) and there has been no possession by a co-owner sufficient to acquire the thing by prescription (CC Art. 1321). Tucker v. Tucker, 150 So.2d 665 (La.App. 4th Cir. 1963).
Mr. Middleton's filings clearly compel the conclusion that he then desired to achieve judicial resolution of the longstanding dispute over the community estate that formerly existed between him and Ms. Middleton. Moreover, a dismissal of her principal demand at this juncture would serve no purpose other than to prolong judicial resolution of their respective claims. The fact that we have last emphasized Mr. Middleton's reconventional demand should not be understood to mean that our result would be different if no reconventional demand had been filed. Except for his motion to substitute counsel, his other 1987 filings are just as effective to constitute waiver.
The majority cites Middleton for the proposition that "[T]he filing of the detailed answers to interrogatories by plaintiff [DOTD] served to facilitate judicial resolution of each dispute on the merits and exhibited a willingness to achieve judicial resolution of the dispute" and concludes that by mere filing of answers to interrogatories DOTD "waived its right to have the case dismissed."
I do not agree that the mere filing of answers to interrogatories under the threat of a motion to compel answers constituted a "submission of the case for decision" for purposes of La.C.C.P. art. 561 or La.R.S. 48:452.1. DOTD was only acting in its own self interest to avoid the sanctions provided for in La.C.C.P. arts. 1471 and 1473. Answering the interrogatories did not "constitute submission of the case for a decision" and did not put the case "out of the hands of the parties." DOTD did not waive its rights under the statute. The majority opinion is in conflict with the rationale of Chevron Oil Company and is wrong.
For the foregoing reasons, I respectfully dissent.
NOTES
[1] There are no cases interpreting the operation of LSA-R.S. 48:452.1 as it applies to actions taken after the five-year period. Before its amendment in 1960, Louisiana Civil Code article 3519 read, in part, as follows:

Whenever the plaintiff having made his demand shall at any time before obtaining final judgment allow five years to elapse without having taken any steps in the prosecution thereof, he shall be considered as having abandoned the same.
The provisions of the article have now been replaced by LSA-C.C.P. art. 561. A line of cases interpreting article 3519 recognized two exceptions to the rule of abandonment. See LSA-C. C.P. art. 561, comment (C) (1960). In LeBlanc v. Thibodaux, 162 So.2d 753 (La.App. 1st Cir. 1964), overruled on other grounds, Pounds v. Yancy, 224 So.2d 1 (La.App. 1st Cir.1969), we recognized the existence of the exceptions under article 3519 before the 1960 amendment and its revision by the adoption of LSA-C.C.P. art. 561. The elements of the five-year abandonment rule are the same in former article 3519 and in LSA-R.S. 48:452.1. Therefore, the exceptions to the five-year abandonment rule recognized by the Supreme Court in Chevron should be extended by analogy to Section 452.1 to provide a consistent judicial interpretation of both five-year rules.
[2] Gulf States Supply & Rental Tools, Inc. (Gulf States) and D & G Machine Works, Inc. (D & G) leased the buildings from Gibson J. Autin, Jr., the landowner at the time the expropriation suit was instituted. Autin sold the property to Rebel Well Services, Inc., which later changed its corporate name to Livingston Oil Well Service, Inc. Apparently, Enserch, through various mergers and acquisitions absorbed the Livingston Corporation, and all of its wholly owned subsidiary corporations, Gulf States, D & G, and Livingston Oil Well Service, Inc.
[1] La.R.S. 48:452.1 was enacted by Acts 1974, Ex.Sess. No. 30, effective January 1, 1975. Prior to that time, La.C.C.P. art. 561 was applied to expropriation cases. State, Department of Highways v. Lessley, 287 So.2d 792 (La.1973). La. R.S. 48:452.1 is specifically directed to an owner's claim for increased compensation in an expropriation case. It does not provide for abandonment of the suit by the expropriating agency. The reason for the enactment of La.R.S. 48:452.1 was to provide a special abandonment rule for expropriation cases that was different from La.C.C.P. art. 561. Insofar as footnote 1 of the majority opinion may imply otherwise, it is not correct.
[2] The motion was filed on March 12, 1987. By Acts 1987, No. 149 the following sentence was added to La.C.C.P. art. 561(A): "However, the trial court may direct that a contradictory hearing be held prior to dismissal."