663 So.2d 414 (1995)
L.S. HUCKABAY, III, et ux, Plaintiffs-Appellees,
v.
RED RIVER WATERWAY COMMISSION, Defendant-Appellant.
No. 27113-CA.
Court of Appeal of Louisiana, Second Circuit.
October 12, 1995.
Order on Rehearing November 22, 1995.
*417 Donald G. Horton, Coushatta, for Appellant.
James G. Bethard, Bethard & Davis, L.L.P., Coushatta, for Appellees.
Before NORRIS, LINDSAY, BROWN and STEWART, JJ., and EDWARDS, J. Pro Tem.
LINDSAY, Judge.
The Red River Waterway Commission appeals a judgment ordering it to pay damages to the plaintiffs-appellees for the value of a lease on land in rural Red River Parish. For the following reasons, we reverse the judgment of the trial court.

FACTS
On November 3, 1981, the plaintiffs-appellees, Sheriff L.S. Huckabay, III, and Judy Webb Huckabay (the Huckabays), leased certain property in Red River Parish from Mrs. Clarice L. Detro and her three children (the Detros). The Huckabays planned to use the property for cattle pasturing for their business of raising and selling cattle. The consideration of the lease was $1,000 annually, with the installments being due on the first day of September each year. The lease was recorded in the conveyance records of Red River Parish. It was for a five-year period, beginning on September 28, 1981, and ending on September 27, 1986.
The lease also contained an option clause which gave the Huckabays the right to lease the property for an additional five years. It further provided that the option must be exercised prior to September 1, 1986.
In addition to the annual rent of $1,000, the Huckabays were to perform certain obligations. First, the lease stated that the coastal Bermuda grass growing on the property had been depleted. The Huckabays were to restore and maintain the stand of coastal Bermuda. Second, the Huckabays *418 were to rebuild and restore the fences on the property that were in poor condition. Failure to maintain the lessors' property in good condition was specified as grounds for cancellation of the lease.
In 1982, the Huckabays moved 117 cattle onto the property and began making the improvements as set forth in the lease. They re-fenced the property, added cross fencing, cleared areas overgrown with thorn trees, limed and fertilized the area, and planted grass. The Huckabays also repaired the hay barn, built a new corral, and added a water well and a pond to the property. Sheriff Huckabay testified at trial that when the lease began, he intended to use the property for a lengthy period of time.
Beginning in 1983 and continuing in 1984, the Huckabays encountered a problem with Bangs disease, which causes female cows to abort their calves during pregnancy. They sold all cows diagnosed with having the disease or suspected of having the disease. The Bangs disease caused their herd to diminish until the problem was finally eradicated in 1986.
On February 4, 1985, the Detros granted a right of entry upon the property to the defendant-appellant, the Red River Waterway Commission (Commission), for a five-year period.[1] The right of entry gave the Commission the authority to perform certain tasks on the property, including surveying, making test borings, and carrying out necessary exploratory work in connection with a proposed lock and dam to be built on the Red River in the vicinity of the property.
Soon after the right of entry was granted, the Huckabays began to have problems with the work of the Commission. The work crews made numerous borings on the property, knocked portions of the fencing down, and rutted the property by using heavy equipment. Sheriff Huckabay testified at trial that the work of the Commission continued to increase and became more destructive to the property.
Despite their problems with the Commission, on September 17, 1986, the Huckabays signed another lease with the Detros for an additional five years pursuant to the option clause in the original lease. However, this lease was not recorded in the conveyance records of Red River Parish. It was also for a five-year period, beginning on September 28, 1986, and ending on September 27, 1991. The consideration for the unrecorded lease was again an annual rental payment of $1,000, which was due on first day of September each year. This lease provided that the Huckabays were to maintain the drainage ditches, the pastures, and the fences in a state of good repair. The unrecorded lease also contained an option clause which gave the Huckabays the right to lease the property for an additional five years and provided that the option must be exercised prior to September 1, 1991.
Sheriff Huckabay testified at trial that because of the problems with the work of the Commission, the Huckabays sold their cows to a neighbor, R.L. Walters, and orally subleased the property to him in 1987. Walters also had problems with the Commission. Finally, Walters removed all of his cattle from the property in 1989.
On April 19, 1989, the Detros sold the property to the Commission. The deed of sale provided that payments for the improvements made to the property were included in the costs of the sale. Prior to the sale, the Commission had a title opinion of the property performed. The title opinion, dated April 20, 1988, acknowledged that the property was "apparently" leased to the Huckabays because of the extension of the 1981 lease. The title opinion also advised the Commission to "satisfy [itself] as to whether or not this lease [had] been extended as [was] set forth therein and if so appropriate action should be dealt with the Lessee therein." Further, an appraisal of the property, dated May 13, 1988, noted that the Huckabays had exercised the five-year lease option provided for in the 1981 lease and had also obtained an additional five-year option for the period of September of 1991 to September of 1996. At the time of the sale, Ben Littlepage, the executive director of the Commission, stated *419 in a letter to the Commission's attorney that the Commission was aware of the lease of property by the Huckabays.
The Huckabays failed to pay timely the rent to the Commission on September 1, 1989. Later in the month, the Huckabays tendered a check for the rental payment to the Commission. During the period of the lease with the Detros, the Huckabays had on several occasions paid the rent after September 1, although they always paid it during the month of September. However, the Commission rejected the check and never cashed it. The Huckabays did not attempt to pay the rent again after that time. Dam construction began on the property in 1990.
On October 17, 1990, the Huckabays filed a petition for damages against the Commission. The Huckabays claimed that the Commission had evicted them without compensation or offer of compensation. They further alleged that the Commission had caused them to suffer damages for loss of profits of their cattle business and for loss of use of the improvements they had placed on the property.
The Commission subsequently named the Detros as third party defendants by virtue of having paid the Detros at the time of the sale of the property for the improvements made upon the property by the Huckabays. The Detros were successful in having the third party demand dismissed. The case then proceeded to a bench trial on the merits, where the trial judge rendered a judgment in favor of the Huckabays.
The trial judge awarded the Huckabays $85,595, plus legal interest from October 17, 1990, for their losses. The damages award included projections of profits from the Huckabays' cattle business through 1996, as Sheriff Huckabay testified he would have exercised the second lease option. The trial court also awarded the Huckabays attorney fees in the amount of one-third of the $85,595, plus interest from October 17, 1990; and two expert witness fees in the amount of $5,000 and $500, respectively, plus legal interest on both fees from October 17, 1990. The judgment also ordered the Commission to pay all costs of the proceedings.
The trial judge did not award compensation for the improvements the Huckabays made to the property. The Commission appeals, raising numerous assignments of error as to the Huckabays entitlement to damages and the amount of damages awarded. The Huckabays have not appealed the trial court's judgment.

DISCUSSION

Exercise of the Five-Year Option
The Commission contends that the trial court erred in deciding that the original lease had not lapsed due to the Huckabays' failure to exercise timely the first five-year option. It argues that the terms of the original lease provided that the Huckabays had to "exercise" the five-year option prior to September 1, 1986. The unrecorded, but written, lease option was not signed by all parties until September 17, 1986.
Mr. Huckabay testified that he notified Mrs. Detro in August of 1986 that the Huckabays would be exercising the option to renew the lease. The Commission offered no testimony to the contrary. That portion of the lease of November 3, 1981, concerning the five-year option merely stated that the option must be "exercised" prior to September 1, 1986. The lease did not provide for any specific method for "exercising" the option. It is apparent that the Huckabays' decision to "exercise" the option was acceptable to the Detros, as they entered into an additional five-year agreement with the Huckabays in the written, but unrecorded, lease option of September 17, 1986. This lease was to commence on September 28, 1986, one day after the original lease expired.
It is a fundamental principle that the lease contract is the law between the parties and defines their respective legal rights and obligations. Frey v. Amoco Prod. Co., 603 So.2d 166 (La.1992); LSA-C.C. Art. 1983. As the parties appear to have agreed to an additional five-year term for the lease of the property with consideration of $1,000 in annual rent and upkeep of the property, and in the absence of a specific method for "exercising" such an option, we find that the Huckabays *420 "exercised" the option timely upon their notification of the same to the Detros in August of 1986.

Unrecorded Lease Option
The Commission also contends that the trial court erred in its reliance on the unrecorded lease option of September 17, 1986, as a basis for compensation to the Huckabays. The Commission relies on the Public Records Doctrine (LSA-R.S. 9:2721) as support of this argument. The Commission states that the lease option could have no effect on the Commission, a third party, because it was not recorded in the conveyance records of Red River Parish.
An unrecorded lease is a compensable property interest under LSA-Const. Art. 1, § 4, when the State takes or damages the property that is the subject of the lease through its power of expropriation. State Dep't of Transp. and Dev. v. Jacob, 483 So.2d 592 (La.1986). Further, LSA-Const. Art. 1, § 4 also protects the rights of a lessee under a written, but unrecorded, lease whose property is "taken" by the State by amicable purchase from the landowner in lieu of expropriation. Soma Enterprises, Inc. v. State Dep't of Transp. and Dev., 521 So.2d 829 (La.App.2d Cir.), writ denied, 522 So.2d 572 (La.1988).
The Commission negotiated the purchase of the subject property from the Detros. It is apparent from the record that the Commission would have expropriated the property had such an agreement not been reached. A letter on February 28, 1985, by the chairman of the commission included the Detro property as a site for a request for right of entry in order that the Corps of Engineers could perform surveys and make soil borings in connection with a proposed lock and dam in Red River Parish. In a letter to the Commission on May 4, 1988, the Louisiana Appraisal Co., Ltd. stated that an appraisal was performed on the property "to estimate the Fair Market Value of the Subject Property which is to be taken...." (Emphasis added.)
Further, testimony at trial from the director of the Commission, Ben Littlepage, revealed that property was being purchased along the Red River, including tracts of land with agricultural leases. If the Commission could not agree with the lessee as to a price, it filed expropriation proceedings. As to the subject property, the Commission acquired a right of entry from the Detros on behalf of the Corps of Engineers in February of 1985, to begin exploratory work with the proposed lock and dam in the area. Finally, Littlepage testified that the lock and dam were being constructed on a portion of the property.
Thus, we conclude that the Huckabays' failure to record the lease option does not prevent them from asserting that they had a property interest which was "taken" by the State via purchase from the Detros in lieu of expropriation.

Untimely Rent Payment
In the alternative, the Commission contends that the trial court erred in deciding that the unrecorded lease option did not lapse due to the Huckabays' failure to pay timely the rent due on September 1, 1989. The Commission argues that the unrecorded lease option terminated, and therefore, the Huckabays had no compensable property interest after this time.
Testimony at trial indicated that the Huckabays had on several occasions paid the rent after the first day of September to the Detros without objection. However, when the Huckabays tendered a check to the Commission for the 1989 rent during the month of September 1989, but after September 1, the Commission refused to cash the check. Neither the original lease, nor the unrecorded lease option, provided for cancellation of the lease upon the Huckabays' failure to pay the rent or late payment of the rent.
Louisiana law affords two remedies to a lessor if a lessee fails to pay rent as it comes due. The lessor may hold the lessee liable for the rent due for the expired term of the lease and sue to dissolve the lease and evict the lessee. In the alternative, the lessor may hold the lessee liable for the rent for both the expired and unexpired terms of the lease. Shreveport Plaza Assoc. v. L.R. Resources *421 II, 557 So.2d 1067 (La.App.2d Cir. 1990). Our review of the record reveals that the Commission did not exercise either of these two remedies.
Further, the cancellation of leases is not favored in Louisiana law. Ergon, Inc. v. Allen, 593 So.2d 438 (La.App.2d Cir.1992). A lessor's right to dissolve a lease upon the lessee's failure to pay rent timely is subject to judicial control according to the circumstances. Ergon, Inc., supra. As a result, a lessee's failure to pay rent timely does not automatically require the termination of the lease. Plunkett v. D & L Family Pharmacy, Inc., 562 So.2d 1048 (La.App. 3d Cir.1990) (quoting Port Arthur Towing Co. v. Owens-Illinois, Inc., 352 F.Supp. 392 (D.C.La.1972)).
Because of the Commission's inaction after the rent was past due and the Huckabays' attempt to pay the rent shortly after the date due, we cannot say that the lease terminated automatically as the Commission contends. This court is not presented with a factual scenario where the Commission held the Huckabays liable for the rent due for 1989, and brought suit to dissolve the lease and to evict. Instead, the Commission refused to accept the Huckabays late rent payment, yet did not pursue any of the legal remedies available to it. Further, the Commission did not produce any evidence at trial of notification to the Huckabays as to the method of payment or its unwillingness to accept late rent payments as the Detros had, other than Littlepage's testimony that he thought "ample arrangements were made to inform the lessor [sic] that the lease would be due by September 1, and we didn't get any payment."
The Huckabays were willing to continue with their portion of the lease obligation by tendering the rent payment, albeit late. We do not believe that the Commission, after remaining silent, should now be permitted to contend successfully that the lease terminated automatically upon the failure of the Huckabays to pay timely the rent. We find no error in this aspect of the trial court's decision.

DAMAGES
Having determined that the Huckabays timely "exercised" the five-year option and had a compensable property interest as a result of this written, but unrecorded, lease option, we now turn to the issue of damages.
An award for business losses must be based on adequate proof. State, Department of Highways v. Constant, 359 So.2d 666 (La.App. 1st Cir.1978), amended in part, 369 So.2d 699 (La.1979); State, Department of Transportation & Development v. Tynes, 433 So.2d 809 (La.App. 1st Cir.1983), writ denied, 437 So.2d 1153 (La.1983); State, Department of Highways v. Enserch Corporation, 559 So.2d 787 (La.App. 1st Cir.1990), writ denied, 567 So.2d 85 (La.1990). The burden of proving damages rests on the party seeking them, who must prove such damages with legal certainty by a preponderance of the evidence. See Tynes, supra. Speculation, conjecture, mere possibility or unsupported probability are not sufficient to support such an award. State, Department of Transportation and Development v. Messenger, 556 So.2d 906 (La.App. 3d Cir.1990).
In City of Lafayette v. Cason, 393 So.2d 424 (La.App. 3d Cir.1980), the court concluded that no business losses had been established because necessary elements of such an award had not been established, i.e., the subject property was not unique in nature or location or indispensable to operation of the business being conducted on the site.
In the instant case, the Huckabays failed to show that there was no other available land in the area upon which they could have continued their cattle business. When asked on cross-examination if it wasn't true that there was abundant pasture available for lease in Red River Parish, Sheriff Huckabay did not directly answer the question, responding instead "I already had that place leased." When further questioned as to whether he had looked for another pasture to rent after the Red River Waterway began drilling on the property in 1986, he replied, "Not really." Or put another way, the plaintiffs failed to show any reason why they could not have easily moved their cattle to another pasture and continued their business *422 operation, as opposed to simply ceasing to do business.
Nor did the Huckabays demonstrate any unique quality about the property taken by the Red River Waterway in the instant case. While there was evidence that the Huckabays made some improvements on the land as part of the consideration under their lease with the landowners (such as repairing the barns and rebuilding the fence), these features are not sufficient to render the property "unique."[2]
Proof of unavailability of other suitable property or uniqueness was a necessary element of the Huckabays' claim for their business losses. Their failure to present such evidence precludes recovery.
In Packard's Western Store, Inc. v. State, Department of Transportation and Development, 618 So.2d 1166 (La.App.2d Cir.1993), writ denied, 629 So.2d 345 (La.1993), and Holland v. State, Department of Transportation, 554 So.2d 727 (La.App.2d Cir.1989), writ denied, 559 So.2d 125 (La.1990), the plaintiffs recovered for their business losses after presenting evidence of their unsuccessful efforts to find comparable replacement locations. In Packard, supra, the inability to secure a suitable relocation site, combined with the state's repeated admonition not to move before it acquired the plaintiffs' property, resulted in the plaintiff's store closing permanently. In the Holland case, the plaintiff testified that, after an extensive search, he was unable to find a comparable location for his service station, which had been in a "unique and strategic business location." In the present case, we have no such evidence of efforts to secure a comparable location.
Based on the foregoing, we find that the portion of the trial court judgment awarding the Huckabays damages for their business losses must be reversed.

Expert Witness Fees and Attorney Fees
The Commission was cast in judgment for the expert witness fee of Dr. Stevens, as well as attorney fees of one-third of the damages awarded in favor of the plaintiffs. Since we are reversing the judgment which cast the Commission in judgment, we reverse the portion of the judgment assessing an expert witness fee of $5,000.00 against the Commission. LSA-R.S. 13:3666.
The award of attorney fees against the Commission must also be reversed. Attorney fees are not to be granted under LSA-R.S. 13:5111 unless the plaintiff is compensated for the taking of property by the defendant.

CONCLUSION
The judgment of the trial court is reversed. All costs are assessed to appellees.
REVERSED.
BROWN, J., dissents to reversal of damage award.
EDWARDS, J., dissents for reasons assigned by BROWN, J.
BROWN, Judge, dissents to reversal of damage award.
Having found a taking by the Red River Waterway Commission of the Huckabays' lease, the majority then concluded that the Huckabays failed to prove any damages.
Under the constitution, a lessee can recover the full extent of its business losses when its property right is taken or damaged. Red River Waterway Commission v. Fry, 628 So.2d 38 (La.App.2d Cir.1993), writ denied, 93-3050 (La. 02/04/94), 633 So.2d 581; Packard's Western Store, Inc., supra. The amount of compensation owed for the taking depends on the facts of each case and must be in accord with the uniqueness of the thing taken. Fry, supra. The existence and measure of the loss occasioned by the taking is a question of fact. An appellate court must not disturb factual findings by the trial court absent manifest error. Id.
The Huckabays leased this property in 1981 to conduct the business of raising and *423 selling cattle. The annual lease rental was $1,000. To make the leased property suitable for their venture, the Huckabays refenced the property, added cross-fencing, cleared areas overgrown with thorn trees, limed and fertilized the area, planted grass, repaired the hay barn, built a new corral, added a water well and pond and maintained drainage ditches. The Huckabays' intent was to use the property for a long time.
In 1985, after the Commission obtained a right-of-entry upon the land, the Huckabays began to have problems. The Commission work crews made numerous borings on the property, knocked portions of the fencing down and rutted the property by using heavy equipment. The work of the Commission gradually increased and became more destructive. In 1989 the Commission bought the property in lieu of expropriation. Dam construction began on the property in 1990. Over a period of four years, the Huckabays' cattle business was shut down by the activities of the Commission.
The gradual interference with the use of the land by the Commission, the low rental and the large capital investment in improving the land easily satisfied the Huckabays' burden of proof. As in Holland v. State, Department of Transportation, supra, the finding that the Huckabays were unable to place themselves in the same pecuniary position at another location is warranted by the record. On the other hand, the Commission made no effort to help relocate the Huckabays and offered no testimony of other available locations similarly improved.
The Commission contends that the Huckabays could have leased "Red Oak", the adjoining property. There was no testimony that "Red Oak" was available for the Huckabays to rent. R.L. Walters testified that he leased "Red Oak" and performed general upkeep, though he paid no rent. Walters further testified that the Commission's work was also interfering with his use of "Red Oak" for pasture. There was no other testimony regarding other possible locations for the Huckabays' cattle operation.
The conclusion that the trial court was wrong in its factual determination concerning the existence of a business loss and its value is an usurpation of the trial court's discretion.
I respectfully would affirm the trial court's damage award.

ON REHEARING
Before NORRIS, BROWN and STEWART, and CLARK and EDWARDS, JJ. Pro Tem.
BROWN, Judge, on rehearing.
The facts have been adequately set forth in the original opinion and dissent. The determination in the original opinion that the Huckabays timely "exercised" the five-year option and have a compensable property interest as a result of this written, but unrecorded, lease option, is affirmed. On rehearing, we reverse the finding that the Huckabays failed to prove any damages.
LSA-Const. Art. 1 § 4 provides in part:
Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit.... [T]he owner shall be compensated to the full extent of his loss.
The term "property" encompasses both tangible and intangible property rights, including a lessee's leasehold interest, even if unrecorded. State Dept. of Transportation and Development v. Jacob, 483 So.2d 592 (La.1986); Packard's Western Store, Inc. v. State Dept. of Transportation and Development, 618 So.2d 1166 (La.App. 2d Cir.1993), writ denied, 629 So.2d 345 (La.1993).
Property is "taken" when the State obtains it for a public purpose, either by amicable purchase from the landowner or by an expropriation action. Packard's Western Store, supra; Soma Enterprises, Inc. v. State Dept. of Transportation and Development, 521 So.2d 829 (La.App. 2d Cir.1988), writ denied, 522 So.2d 572 (La.1988). Property is "damaged" when the action or inaction of the State, in the exercise of its power to obtain property for a public purpose, results in the diminution of the value of the tangible property or intangible property *424 right. Packard's Western Store, supra; Soma Enterprises, supra.
Under the constitution, a lessee can recover the full extent of its business losses when its property right is taken or damaged. Red River Waterway Commission v. Fry, 628 So.2d 38 (La.App. 2d Cir. 1993), writ denied, 93-3050 (La. 02/04/94), 633 So.2d 581; Packard's Western Store, supra. The amount of compensation owed for the taking depends on the facts of each case and must be in accord with the uniqueness of the thing taken. Fry, supra. The existence and measure of the loss occasioned by the taking is a question of fact. An appellate court must not disturb factual findings by the trial court absent manifest error. Id.
The Huckabays leased this property in 1981 to conduct the business of raising and selling cattle. The annual lease rental was $1,000. To make the leased property suitable for their venture, the Huckabays refenced the property, added cross-fencing, cleared areas overgrown with thorn trees, limed and fertilized the area, planted grass, repaired the hay barn, built a new corral, added a water well and pond and maintained drainage ditches. The Huckabays' intent was to use the property for a long time.
In 1985, after the Commission obtained a right-of-entry upon the land, the Huckabays began to have problems. The Commission work crews made numerous borings on the property, knocked portions of the fencing down, and rutted the property by using heavy equipment. The work of the Commission gradually increased and became more destructive. In 1989 the Commission bought the property in lieu of expropriation. Dam construction began on the property in 1990. Over a period of four years, the Huckabays' cattle business was shut down by the activities of the Commission.
The gradual interference with the use of the land by the Commission, the low rental and the large capital investment made by the Huckabays to improve the land easily satisfied their burden of proof. As in Holland v. State, Department of Transportation, 559 So.2d 125 (La.1990), the finding that the Huckabays were unable to place themselves in the same pecuniary position at another location is warranted by the record. On the other hand, the Commission made no effort to help relocate the Huckabays and offered no testimony of other available locations similarly improved.
The Commission contends that the Huckabays could have leased "Red Oak", the adjoining property. There was no testimony that "Red Oak" was available for the Huckabays to rent. R.L. Walters testified that he leased "Red Oak" and performed general upkeep, though he paid no rent. Walters further testified that the Commission's work was also interfering with his use of "Red Oak" for pasture. There was no other testimony regarding other possible locations for the Huckabays' cattle operation.
We now conclude that the trial court was correct in its factual determination concerning the existence of a business loss.

Amount of Award
If a lessee's business losses are proved to have been caused by the State's taking or damaging of the property, the constitutional measure of recovery is compensation for the "full extent of the loss" sustained. Fry, supra; Packard's Western Store, supra. This standard requires that an owner be put in as good a position pecuniarily as he enjoyed prior to the taking of the property. State through Dept. of Highways v. Constant, 369 So.2d 699 (La.1979); Fry, supra; Packard's Western Store, supra.
The determination of the amount of compensation owed must be made on the basis of the facts of each case and in accord with the uniqueness of the thing taken. This court will not disturb such findings by the trial court absent manifest error. Fry, supra.
If an expert's well-reasoned testimony supports an award of damages, and if the testimony is uncontradicted and accepted by the trier of fact, the property owner should prevail. State Dept. of Transportation and Development v. Dietrich, 555 So.2d 1355 (La.1990); Fry, supra. While the trial court may not substitute its own opinion for that of the expert who testified at trial if *425 such testimony is based on sound reasoning, the court does not have to accept the exact amount submitted by the expert. Fry, supra.

Trial Court's Award of Damages
In its brief, the Commission contests the majority of the findings of the Huckabays' expert, Dr. Melvin Stevens. We note, however, that the trial judge's calculation of damages was far less than the amounts estimated by Dr. Stevens. In his report, Dr. Stevens had calculated the Huckabays' total amount of damages at $195,868. He projected a larger amount of profits for the period of 1991 to 1996 than the trial judge actually awarded. We will therefore address the findings of the trial court as to the Huckabays' damages.
As an initial finding in his calculation of the damages, the trial judge concluded that the leased property was improved pasture and could accommodate 100 head of cattle. The Huckabays' expert witness on raising cattle in Red River Parish, R.L. Walters, testified that the property would be considered improved or semi-improved and could support this number of cows. Sheriff Huckabay also testified that the property could support 100 cows by rotating usage of sections of pasture and that it had in the past supported up to 117 cows. Further, the report of the Louisiana Appraisal Co., Ltd., prepared pursuant to the Commission's authorization in 1988, described the property as "improved pasture and maintained accordingly." We conclude that the evidence supported the trial judge's finding that the subject property was improved pasture capable of accommodating 100 cows.
The trial judge first determined the Huckabays' net income for the years 1987 through 1991, the time period of the unrecorded lease. The trial judge found that the average yearly income for the period of 1981 through 1986, excluding interest and depreciation costs, was $5,079.20. He then used this figure to project the income for the 1986 to 1991 period as $25,396 ($5,079.20 × 5 = $25,396). The judge stated that his figure considered actual costs, but not interest expense.
The trial judge then calculated the interest expense for this period based upon Sheriff Huckabay's testimony at trial as to the amounts he would have owed in interest: 1988$2,500; 1989$1,500; and 1990 $1,000. The judge also allocated interest expenses for 1987$3,500; and 1986 $4,500. The total interest expense for the 1986 to 1991 time period was $13,000. Sheriff Huckabay testified that the cattle operation's debts would have been paid off in 1990. The trial judge agreed with this testimony. He then subtracted the interest expense from the projected income for this same time period, resulting in a net income of $12,396 ($25,396 - $13,000 = $12,396).
The judge next calculated the net income for the years 1992 through 1996 based upon Sheriff Huckabay's testimony that he would have exercised the second lease option for this time period. The trial judge used the net income of $7,490 for the 1982-83 year as a guideline because "it was the most comparable in terms of analysis with 96 head of cattle" and because "[t]his [was] also after most of the start-up costs were paid." His calculation for the net income, based upon the $7,490 guideline, with a "deletion of some start-up costs and a discount factor," was: 1991-92$7,500; 1992-93$8,500; 1993-94$9,500; 1994-95$10,500; and 1995-96$11,500. The total net income for this time period was $47,500, with no interest expense included because the underlying debt would have been paid.
Next, the trial judge calculated the value that the cattle would have had at the end of the lease period. Sheriff Huckabay testified that he had rid his herd of Bangs disease in 1986, which had reduced the herd to approximately 59 cows. Dr. Stevens testified that the Huckabays could have raised enough cows to increase the herd without having to buy additional cattle. The judge determined that the Huckabays would have had 96 head of cattle with a value of $539 each,[1] for a total value of $51,744. He then subtracted $29,798, *426 the amount the Huckabays received when they sold their herd in 1987. The resulting amount the Huckabays were entitled to for the value of the cattle was $21,946 ($51,744 - $29,798 = $21,946).
Finally, the judge included an award for the actual expenses of 1986-87, the year in which the Huckabays ceased their cattle operation and sold the herd. The court attributed $3,753 for this amount.
Thus, the total award for the loss sustained was as follows:

Net income for 1986-87
 through 1990-91 = $12,396
Net income for 1991-92
 through 1995-96 = $47,500
Value of herd in 1996, less
 amount received for sale of
 herd in 1987 = $21,946
Actual expenses for 1986-87 = $ 3,753
 _______
Total amount of loss = $85,595

After reviewing the record, we do not find that the trial judge was manifestly erroneous in his award of damages, and affirm subject to our amendments.
The Commission contends that Dr. Stevens' calculation of net income for the period of 1987 through 1991 is erroneous. We find no merit in the Commission's arguments.
The trial judge's calculations for 1987 through 1991 reflected a net income projection of $12,396, with this figure reflecting a consideration of actual costs and a deduction of interest for this same period. The trial judge's projection of net income was supported by the findings of Dr. Stevens, although less than his calculations, and by the testimony of Sheriff Huckabay, who estimated the amount of interest he would have owed on the cattle business during this period. The only error we find in this aspect of the trial judge's opinion concerns the finding of a net profit for the year ending 1987 (referred to as 1986-87 by the trial judge in his written opinion). Dr. Stevens' calculations did not show a net profit for this time period. We therefore reduce the amount awarded for this period by $5,079.20, the amount of net income the trial judge attributed for 1986-87.
We find no error in the trial judge's award of damages for 1992 through 1996. The written, but unrecorded, lease provided for an additional five-year option period, beginning in September of 1991. Sheriff Huckabay testified that had the work of the Commission not interfered with his cattle business on the property, he would have exercised this option. Sheriff Huckabay referred to the extensive amount of work he performed on the property as indicative of his intent to remain under the lease for a long time period. Also, the Huckabays had previously exercised the first five-year option in 1987.
This court has previously permitted a lessee to recover damages beyond the expiration of his lease upon a showing that the lease would have been extended for a reasonable time period. Fry, supra; Packard's Western Store, supra. We find there was sufficient evidence to demonstrate that the Huckabays would have exercised the second five-year option.
The trial judge calculated the net income for 1991 through 1996 by a comparison to the year 1982-83, concluding it was the most similar. The trial judge's award was again considerably less than the amounts Dr. Stevens had projected for this period, but was supported by his findings that the Huckabays would have enjoyed their largest profits during this time period. We therefore affirm this aspect of the trial judge's award.
The trial judge's award of damages also included compensation for the value that the 96 head of cattle that the Huckabays would have had in 1996. The judge attributed a value of $539 per head, for a total value of $51,744. He then subtracted $29,798, the amount the Huckabays received when they sold their herd in 1987, resulting in an award of $21,946 ($51,744 - $29,798 = $21,946). Dr. Stevens calculated that the cattle would be worth $28,700 at the end of 1996, and then discounted this figure back to October 17, 1990, the date of judicial demand, for a value of $16,843.
The objective of compensating a lessee for his business losses is putting him in as good a position pecuniarily as he enjoyed prior to the taking of the property. Constant, supra; Fry, supra; Packard's Western Store, supra. Thus, we find that the trial judge was correct *427 in attributing the value that the cattle would have had in 1996 as the basis for this award to the Huckabays, instead of the value of the cattle at the date of judicial demand. We also affirm this aspect of the trial judge's award.
The last area of damages concerns the trial court's award for actual expenses of 1986-87, the year the Huckabays discontinued their cattle business and sold the herd. The trial judge found that the actual expenses for this year must be added to the Huckabays' loss, with "other income taken into consideration[,]" thereby resulting in the net amount attributable to the loss, $3,753. As this award represented expense the Huckabays incurred prior to their sale of the cattle, we find no manifest error by the trial court. Thus, we affirm this aspect of the judgment.

Cost of Lease
The Commission contends that the trial judge's award to the Huckabays should be reduced by the amount of the yearly rental of the property. The Huckabays' most recent rental payment was for the 1988-89 term, as the Commission refused to accept the rent in September of 1989. The Commission claims that rent would be owed for 1989 through 1996, a period of seven years.
In Fry, supra, we reduced a lessee's award by the yearly rent where the trial court had noted this cost in its opinion, but failed to include it in its computation of the amount awarded. In the case at bar, the trial judge made no mention of whether his award included a deduction for the yearly rental the Huckabays would have owed. Therefore, we conclude that the damages awarded were not reduced by the cost of the lease for this period.
The Commission is entitled to have the award reduced by the amount the Huckabays would have paid to lease the property. The amount of rent due in September of 1989 and 1990 was $1,000 each year. The amount of the rent for the second lease option was to be negotiated between the parties at the time the Huckabays exercised such option. As the Commission has requested that the Huckabays' award be reduced by $1,000 per year, and this amount was the cost of the lease for the two prior five-year periods, we determine that the amount of rent due from 1991 through 1995 would have been $1,000 each year. Thus, we amend the judgment to reduce the trial judge's award by the yearly cost of the lease from 1989 through 1995, a total of $7,000.

Expert Witness Fees
The Commission also contends that the trial court erred in its award of $5,000 to Dr. Stevens as an expert witness fee because of the alleged errors in his findings.[2]
An expert witness is entitled to reasonable compensation for court appearances and work in preparation of his testimony. McGee v. Miears, 516 So.2d 1241 (La. App. 2d Cir.1987). The trial court has discretion in determining such an award, McGee, supra, and it will not be altered on appeal without a showing of an abuse of discretion. Hunt v. Board of Supervisors of Louisiana State University, 522 So.2d 1144 (La.App. 2d Cir.1988). LSA-R.S. 13:3666 provides that one of the methods by which a trial court determines expert witness fees, which are paid by the party cast in judgment, is from the testimony of the expert regarding his time and costs of services rendered.
Dr. Stevens is a retired university professor and an agricultural consultant and real estate broker who has testified in several cases concerning expropriation-type situations. He had previously taught agronomy, agricultural economics, and farm management. As part of Dr. Stevens' testimony, the Huckabays introduced his statement of fees for services rendered into evidence without objection from the Commission. Dr. Stevens indicated that he had spent 131.75 hours in research, report preparation, and testifying, in addition to costs he sustained for telephone, copying, and other expenses. He submitted that his total fee for services rendered was $10,150.51. Apparently, the trial judge considered this figure to be too high and awarded Dr. Stevens a lesser amount.
*428 Considering Dr. Stevens' qualifications and his estimated expenses, we do not find that the trial court abused its discretion in awarding $5,000 as his expert witness fee.

Attorney Fees
The Commission also assigns as error the excessiveness of the trial judge's award of one-third of the judgment, plus legal interest from the date of judicial demand, as attorney fees. It refers to LSA-R.S. 48:453, the guideline for the award of attorney fees in an expropriation proceeding. The Huckabays, however, correctly point out that no expropriation suit was filed in this case. Instead, the subject property was purchased from the landowner. In such a situation, there is an "inverse condemnation." See Simmons v. Board of Comm'rs of Bossier Levee Dist., 624 So.2d 935 (La.App. 2d Cir.1993). Thus, we look to the relevant portion of LSA-R.S. 13:5111 for guidance:
A. A court of Louisiana rendering a judgment for the plaintiff, in a proceeding brought against the state of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as a part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred because of such proceeding. (Emphasis added.)
As we have determined that a "taking" has occurred as the result of the Commission's actions, we find that the trial court was correct in concluding that the Huckabays were entitled to an award for attorney fees. We now must determine whether one-third of the judgment, plus legal interest from the date of judicial demand, is a reasonable amount.
The Huckabays cite as support Naquin v. Dept. of Transportation and Development, 604 So.2d 62 (La.App. 1st Cir.1992), writ denied, 608 So.2d 169 (La.1992), a case in which the first circuit affirmed the trial court's attorney fee award of one-third of the amount of damages awarded, referring to LSA-R.S. 13:5111 as the standard for such an award. The Naquin case was factually similar to the case at bar, as the plaintiffs were lessees of farm land who incurred losses of crops, leasehold rights, and future profits when the state purchased the land from the landowners without compensating the lessees. The trial court in Naquin based its attorney fee award upon the plaintiffs' contingency fee contract providing for such fees in an amount of one-third of any award and upon the complexity of the issues and work involved with the case.
The Huckabays introduced into evidence the contingency fee contract with their attorney. The contract provided for attorney fees in the amount of one-third of any award received in their action against the Commission, plus interest. We note that this court is not bound by the amount the plaintiffs have contracted to pay their attorneys. Simmons, supra.
The trial judge noted in his written opinion the thorough research and work done by the attorneys in this case. Since the time the Huckabays initiated this action in October of 1990, there have been several motion hearings and depositions. We are further impressed by the complexity of the issues presented. Considering these factors, we find the award of one-third of the judgment to be reasonable.

CONCLUSION
After our elimination of the trial court's award for the amount attributable to net income for 1986-87 and a reduction of the amount awarded by the yearly rental costs for 1989 through 1996, we amend the trial court's judgment as follows:

Net income for 1987-88
 through 1990-91 = $ 7,316.80
Net income for 1991-92
 through 1995-96 = $47,500.00
Value of herd in 1996, less
 amount received for sale of
 herd in 1987 = $21,946.00
Actual expenses for 1986-87 = $ 3,753.00
 __________
Total amount of loss = $80,515.80
 Less rent costs for 1989-90
 through 1995-96 = $ 7,000.00
 __________
Amount of judgment $73,515.80

*429 We further amend the amount of attorney fees to one-third of the judgment plus legal interest from date of judicial demand. We affirm the trial court's award for expert witness fees to Dr. Melvin Stevens and Mr. R.L. Walters.

DECREE
At the Commission's cost as allowed by law, and AS AMENDED, the judgment of the trial court is AFFIRMED.
NORRIS, J., concurs in the result.
NOTES
[1] The Red River Waterway Commission is a political subdivision of the State of Louisiana and the governing body of the Red River Waterway District. See LSA-R.S. 34:2301-2317.
[2] However, these improvements might have been appropriate factors to consider in determining the amount of the relocation award to place the plaintiffs in as good a position on a comparable piece of pasture landif they had carried their initial burden of entitlement. In any cause, there was no evidence on this issue.
[1] The trial judge arrived at this figure by dividing the total value of the three classifications of the cattle sold in Red River Parish in 1993 (the latest figure available to the trial judge) by the total number of head sold. The resulting figure was $539 per head.
[2] The Commission does not contest the $500 award to Mr. Walters as an expert's fee.